PHILLIPS v JORDAN

Docket No. 216559. Submitted July 7, 1999, at Lansing. Decided May 9, 2000, at 9:05 A.M. Leave to appeal sought.

Kelli Jo Jordan was granted a judgment of divorce from John C. Jordan in the Shiawassee Circuit Court in 1994. The parties were granted joint legal custody of their minor daughter, with physical custody being awarded to the plaintiff. The court, Gerald D. Lostracco, J., without making an independent determination regarding the best interests of the child, entered a stipulated order in July 1997 that amended the judgment of divorce to provide the parties joint legal and physical custody. The order also provided that the plaintiff would keep the child in the Owosso School District until the child reached the age of majority and, if the plaintiff moved from the district, the defendant would be given physical custody of the child. In April 1998, Kelli Jo married Brent D. Phillips, a man who lives and works in California. In July 1998, she petitioned for a change of domicile from Michigan to California and an assessment of child support. The defendant responded with a petition for a change of custody and seeking enforcement of the July 1997 stipulated order. Following hearings, Judge Lostracco set aside the stipulated order, denied the defendant's petition for a change of custody, and granted Kelli Jo Phillips' petition for change of domicile. The defendant appealed.

The Court of Appeals *held*:

1. Contract principles do not govern child custody matters. Although the courts encourage parents to reach agreement regarding child custody matters, courts cannot blindly accept the parents' stipulations regarding custody and must independently determine what is in the best interests of the child.

2. The court erred in entering the July 1997 stipulated order without making an independent determination regarding the best interests of the child. Therefore, the court was obligated to set aside that order and make its independent determination regarding the

best interests of the child. The court properly set aside the stipulated order.

3. A custody award may be modified on a showing of proper cause or change of circumstances that establishes that the modification is in the best interests of the child. However, where the modification would change a child's established environment, the moving party must show by clear and convincing evidence that it is in the child's best interest.

4. The court's determination that an established custodial environment was with the plaintiff and its findings with regard to the factors for determining the best interests of the child, MCL 722.23; MSA 25.312(3), were not against the great weight of the evidence.

5. The court's decision to grant a change of domicile was not an abuse of discretion.

Affirmed.

HOLBROOK, JR., P.J., dissenting, stated that a review of the statutory best interest factors is required only where a "child custody dispute" has arisen. Where the parties agree regarding modification of a custody arrangement, a court is authorized, but is not bound, to accept the parties' stipulation without first specifically reexamining the best interest factors. The court erred in not enforcing the July 1997 stipulated order. The court did not err in disregarding the provision regarding a change of custody if the plaintiff moved from the school district because that provision usurped the court's authority to consider the child's best interests. The court abused its discretion in granting the petition for change of domicile because the purported potential advantages for the child of the move to California do not outweigh the existing advantages of remaining in Michigan. That part of the order should be reversed. The part of the order regarding a change in custody should be reversed and the matter should be remanded for a reexamination of the custody issue in light of the existence of a joint physical and legal custody relationship.

1. DIVORCE — CHILD CUSTODY — STIPULATED ORDERS.

Stipulated orders entered by a trial court generally are construed under the same rules of construction as contracts; however, contract principles do not govern child custody matters.

2. DIVORCE — CHILD CUSTODY — STIPULATED ORDERS.

Parents are encouraged to work together to reach agreements regarding child custody matters, but the circuit court retains jurisdiction over the child until it reaches the age of majority; the court may not blindly accept the parents' stipulation regarding custody, but

must independently determine what is in the best interests of the child (MCL 722.27[1][c]; MSA 25.312[7][1][c]).

3. DIVORCE — CHILD CUSTODY — MODIFICATION OF ORDERS.

A child custody award may be modified on a showing of proper cause or change of circumstances that establishes that the modification is in the child's best interest; however, where a modification of custody would change the established custodial environment of the child, the moving party must show by clear and convincing evidence that it is in the child's best interest (MCL 722.27[1][c]; MSA 25.312[7][1][c]).

*Bailey & Smith, P.C.* (by *Mark R. Bailey*), for the plaintiff.

*Thomas J. Dignan*, for the defendant.

Before: HOLBROOK, JR., P.J., and ZAHRA and J.W. FITZGERALD*, JJ.

ZAHRA, J. Defendant appeals as of right from an order denying his petition for a change of custody and granting plaintiff's petition for a change of domicile. We affirm.

Plaintiff and defendant were divorced in January 1994. The judgment of divorce granted the parties joint legal custody of their two-year-old daughter with physical custody awarded to plaintiff. Following the divorce, plaintiff allowed defendant liberal visitation beyond that ordered by the trial court and often asked the paternal grandmother to baby-sit the child in lieu of a hired baby-sitter. On July 28, 1997, the trial court entered a stipulated order signed by both parties changing custody to joint physical and legal custody. The order also provided that plaintiff would keep the child in the Owosso School District until she

* Former Supreme Court justice, sitting on the Court of Appeals by assignment.

reached the age of majority and, if plaintiff moved away from Owosso, defendant would be given physical custody of the child.

In April 1998, plaintiff married a man who lives and works in California. In July 1998, plaintiff petitioned the trial court for change of domicile from Michigan to California and requested an assessment of child support. Defendant in turn filed a petition for change of custody and asked the trial court to enforce the July 28, 1997, stipulated order. Plaintiff then petitioned for change of custody and asked the trial court to set aside the stipulated order. At the conclusion of a four-day evidentiary hearing, the trial court set aside the stipulated order, denied defendant's petition for change of custody, and granted plaintiff's petition for change of domicile.

We apply three standards of review in custody cases. The great weight of the evidence standard applies to all findings of fact. A trial court's findings regarding the existence of an established custodial environment and regarding each custody factor should be affirmed unless the evidence clearly preponderates in the opposite direction. *Fletcher v Fletcher*, 229 Mich App 19, 24; 581 NW2d 11 (1998), citing *Fletcher v Fletcher*, 447 Mich 871, 877-878; 526 NW2d 889 (1994). An abuse of discretion standard applies to the trial court's discretionary rulings such as custody decisions. *Id.* Questions of law are reviewed for clear legal error. *Fletcher, supra,* 229 Mich App 24, citing MCL 722.28; MSA 25.312(8), and *Fletcher, supra,* 447 Mich 881. A trial court commits clear legal error when it incorrectly chooses, interprets, or applies the law. *Fletcher, supra,* 229 Mich App 24, citing *Fletcher, supra,* 447 Mich 881.

Defendant first argues that the trial court erred in setting aside the July 28, 1997, stipulated order. We disagree. Stipulated orders that are accepted by the trial court are generally construed under the same rules of construction as contracts. See *Limbach v Oakland Co Bd of Co Rd Comm'rs*, 226 Mich App 389, 394; 573 NW2d 336 (1997); *Eaton Co Bd of Co Rd Comm'rs v Schultz*, 205 Mich App 371, 379-380; 521 NW2d 847 (1994). Like contracts, stipulated orders are agreements reached by and between the parties. *Id.* at 378-379. However, contract principles do not govern child custody matters. The Legislature imposed on trial courts, through the Child Custody Act, MCL 722.21 *et seq.*; MSA 25.312(1) *et seq.*, the duty to review proposed changes in child custody to determine whether the changes would be in the best interests of the child. MCL 722.27(1)(c); MSA 25.312(7)(1)(c). While trial courts try to encourage parents to work together to come to an agreement regarding custody matters, the circuit court retains jurisdiction over the child until the child reaches the age of majority. The trial court cannot blindly accept the stipulation of the parents, but must independently determine what is in the best interests of the child. *Lombardo v Lombardo*, 202 Mich App 151, 160; 507 NW2d 788 (1993), citing *West v West*, 241 Mich 679, 683-684; 217 NW 924 (1928), and *Ebel v Brown*, 70 Mich App 705, 709; 246 NW2d 379 (1976).

In *Napora v Napora*, 159 Mich App 241; 406 NW2d 197 (1986), as in this case, the parties agreed to a change of custody that was later disputed by the custodial parent. The *Napora* Court held that the trial court erred in believing that it was required to uphold the stipulation of the parties:

Despite any agreement which the parties may reach in regard to the custody of their child, where a custodial environment is found to exist physical custody should not be changed absent clear and convincing evidence that the change is in the best interests of the child. [*Id.* at 246-247 (citation omitted)].

See also *In re Ford Estate*, 206 Mich App 705, 708; 522 NW2d 729 (1994), holding, in part, a stipulation between the parties was not binding because "the parties to a civil matter cannot by their mere agreement supersede procedures and conditions set forth in statutes or court rules." (citation omitted).

In the present case, the trial court entered the stipulated order to change custody without making any independent determination regarding the best interests of the child pursuant to the Child Custody Act. We conclude that the trial court erred in failing to make such a determination.[1] As such, the trial court

---

[1] The dissent would hold that "[w]hen the parties are in agreement regarding a modification of the custodial arrangement . . . the court has the authority, but is not bound, to accept the parties' stipulation without first specifically reexamining the best interest factors." *Post* at 33-34. The dissent relies on *Dick v Dick*, 210 Mich App 576, 584-585; 534 NW2d 185 (1995), and *Koron v Melendy*, 207 Mich App 188, 191; 523 NW2d 870 (1994), in support of its conclusion. However, the decisions in those cases were based on stipulations involving the original judgments of divorce, not a modification of custody. To apply the reasoning from *Dick* and *Koron* to the case at bar would be contrary to the plain language of MCL 722.27(1)(c); MSA 25.312(7)(1)(c), which provides, in pertinent part:

The court shall not modify or amend its previous judgments or orders or issue a new order so as to change the established custodial environment of a child *unless there is presented clear and convincing evidence that it is in the best interest of the child.* [Emphasis added.]

The dissent focuses on the word "dispute" in § 7 of the Child Custody Act to suggest that the quoted provision applies only where the parties seek specific judicial intervention from the court. We opine that such a narrow reading of § 7 is unwarranted in light of well-settled principles of

statutory interpretation. Statutory language should be construed reasonably, keeping in mind the purpose of the act. *Barr v Mt Brighton Inc*, 215 Mich App 512, 516; 546 NW2d 273 (1996). The first criterion in determining intent is the specific language of the statute. *In re MCI Telecommunications Complaint*, 460 Mich 396, 411; 596 NW2d 164 (1999). Every word within a statute should be presumed to have some meaning, and a construction that would render any part of a statute surplusage or nugatory should be avoided. *Hoste v Shanty Creek Management, Inc*, 459 Mich 561, 574; 592 NW2d 360 (1999). Unless defined in the statute, every word or phrase of a statute should be accorded its plain and ordinary meaning, taking into account the context in which the words are used. MCL 8.3a; MSA 2.212(1); *Western Michigan Univ Bd of Control v Michigan*, 455 Mich 531, 539; 565 NW2d 828 (1997).

The Child Custody Act is equitable in nature and, thus, should be liberally construed. MCL 722.26(1);   MSA 25.312(6)(1); *Frame v Nehls*, 452 Mich 171, 176; 550 NW2d 739 (1996). Subsection 7(1) of the act reads in pertinent part:

> If a child custody dispute has been submitted to the circuit court as an original action under this act or has arisen incidentally from another action in the circuit court or an order or judgment of the circuit court, for the best interests of the child the court may do 1 or more of the following:

The act does not define "child custody dispute." Therefore, it is proper to consult dictionary definitions to determine its meaning. *Popma v Auto Club Ins Ass'n*, 446 Mich 460, 470; 521 NW2d 831 (1994); *Ryant v Cleveland Twp*, 239 Mich App 430; 608 NW2d 101 (2000). Dictionary definitions of the term "dispute" include

> 1. to engage in argument or debate. 2. to argue vehemently; quarrel. . . . 3. to argue or debate about. 4. to argue against; call in question. 5. to quarrel or fight about; contest. 6. to strive against; oppose . . . 7. a debate, controversy, or difference of opinion. 8. a quarrel. [*Random House Webster's College Dictionary* (1997).]

Blacks Law Dictionary (7th ed) defines the term as: "A conflict or controversy, esp. one that has given rise to a particular lawsuit." Given those definitions and the act's purpose of promoting the best interests and welfare of children, *Frame, supra* at 176, we read the language in § 7 in the greater context of the Child Custody Act to mean any case arising from divorce or otherwise where child custody is at issue. Thus, a child custody dispute, as that term is used in § 7 of the Child Custody Act, is any matter that relates to the custody of a child from the time the issue of custody arises until the child reaches the age of majority. This interpretation is supported by the fact that, from the time a court takes jurisdiction over a child custody dispute, all matters relating to the child's welfare and upbringing, such as child support, parenting time, and changes of custody

was obligated to set aside the July 28, 1997, stipulated order and make its own determination whether a change of custody would be in the child's best interests pursuant to the Child Custody Act. Therefore, we hold the trial court properly set aside the stipulated order of July 28, 1997.

Defendant next argues that the trial court ignored the great weight of the evidence in failing to grant custody to him. We disagree.[2] A custody award may be modified on a showing of proper cause or change of circumstances that establishes that the modification is in the child's best interest. MCL 722.27(1)(c); MSA 25.312(7)(1)(c); *Dehring v Dehring*, 220 Mich

---

are implemented by order of the court. These orders would be unwarranted under the dissent's interpretation of § 7. Thus, we believe that we have reasonably construed the text of § 7 and applied it accordingly. See Scalia, A Matter of Interpretation: Federal Courts and the Law (New Jersey: Princeton University Press, 1997), p 23.

It is also noteworthy that the dissent's assertion that "[a]s with judicial acceptance of an original custody arrangement, implicit in a court's acceptance of a modification agreement is an acknowledgment that the agreement is in the child's best interest", *post* at 35, n 2, is particularly inapplicable to the present case. The lower court record suggests the trial court did not consider, either implicitly or explicitly, if the stipulation was in the child's best interest before entering its order. The fact that the stipulation was signed on behalf of the trial judge as well as the trial court's discussion during the evidentiary hearing regarding the stipulation's effect of precluding the court, "potentially forever," from considering whether it was in the best interest of the child, suggest the stipulation was blindly accepted without any consideration of its effect on the child.

The trial court correctly determined that blind acceptance of the parties' July 28, 1997, stipulated order changing physical custody, i.e., changing the established custodial environment, was improper absent clear and convincing evidence that it is in the best interest of the child.

[2] Defendant preliminarily argues that the trial court erred in failing to allow the child's doctor to testify regarding whether plaintiff provided adequate medical treatment for her daughter. However, defendant waived this issue by failing to cite authority to support this argument. Insufficiently briefed issues are deemed waived on appeal. *Dresden v Detroit Macomb Hosp Corp*, 218 Mich App 292, 300; 553 NW2d 387 (1996). Therefore, we will not address this issue.

App 163, 166; 559 NW2d 59 (1996).[3] However, when a modification of custody would change the established custodial environment of a child, the moving party must show by clear and convincing evidence that it is in the child's best interest. *Rummelt v Anderson*, 196 Mich App 491, 494; 493 NW2d 434 (1992). A custodial environment is established if

> over an appreciable time the child naturally looks to the custodian in that environment for guidance, discipline, the necessities of life, and parental comfort. The age of the child, the physical environment, and the inclination of the custodian and the child as to permanency of the relationship shall also be considered. [MCL 722.27(1)(c); MSA 25.312(7)(1)(c).]

The trial court acknowledged that defendant and his family played important roles in the child's life, but that, nevertheless, the custodial environment was with plaintiff as opposed to defendant. The trial court noted that this is not a case of plaintiff versus defendant and his mother, Sharon Jordan. In fact, the trial court opined that both plaintiff and defendant would fall short if they had to compete with Sharon Jordan for custody of the child. However, the trial court looked at the factors as they pertained to plaintiff and defendant, not including the extended family.

The evidence revealed that, during defendant's parenting time, the child spent the majority of her time at Sharon Jordan's house. Even on the weekends when defendant was not working, defendant would spend the day with the child, but the child usually slept at Sharon Jordan's house rather than at defend-

---

[3] Defendant contends that a change in circumstances exists in this case as a result of plaintiff's desire to move the child to California.

ant's house. In fact, defendant testified that the child stayed overnight with him less than five times a year. Defendant rarely spent time alone with the child without the presence of his mother and other relatives. The report of the independent psychologist, Dr. Heather Zak, indicated that the child had probably bonded more closely with the paternal grandmother and aunt than she had with defendant.

The trial court determined that the child had been with plaintiff since birth except for parenting time spent with defendant. The trial court further found that the child looked to plaintiff, as between the parents, for guidance and the other factors listed in MCL 722.27(1)(c); MSA 25.312(7)(1)(c). On the basis of these facts, we cannot conclude that the trial court's determination that a custodial environment was established with plaintiff was against the great weight of the evidence.

Once it was determined that a custodial environment was established with plaintiff, it was incumbent on defendant to show by clear and convincing evidence that a change in custody was in the child's best interests. *Rummelt, supra* at 494.

The trial court must examine the factors listed in MCL 722.23; MSA 25.312(3) to determine the best interests of the child. The trial court found that the parties were equal with regard to all the factors listed in MCL 722.23; MSA 25.312(3), except factors c, d, and e, which the trial court found to weigh in favor of plaintiff.

MCL 722.23(c); MSA 25.312(3)(c) examines each party's capacity to provide food, clothing, and medical treatment. There was evidence that plaintiff voluntarily refused child support when defendant was out of

work because of a broken leg. After defendant returned to work, plaintiff still did not request child support. The evidence showed that plaintiff was the primary caregiver and she provided food, clothing, and toys to the child on a daily basis. While there was evidence that defendant and his family gave the child gifts of clothing, this clothing usually stayed at their house and the child did not take the items when she left.

Defendant alleges that plaintiff failed to provide proper medical care for the child twice in the past. The trial court did not make a specific finding regarding either parent's ability to provide medical care; however, in both instances cited by defendant, the facts show that the child received the necessary medical care. On the first occasion, the child was taken to the hospital by defendant's mother while she was watching the child, but plaintiff did not go to the hospital to check on the child until the next day. On another occasion, plaintiff had taken the child to the hospital, but the hospital was unable to reach plaintiff regarding follow-up care because plaintiff's phone was disconnected and registered letters were allegedly not claimed by plaintiff. Although plaintiff's actions in both instances may not have been ideal, that does not prove that plaintiff is incapable of providing adequate medical care for the child. Therefore, we cannot conclude that the trial court's findings were against the great weight of the evidence with regard to factor c.

MCL 722.23(d); MSA 25.312(3)(d) considers the length of time the child has lived in a stable, satisfactory environment, and the desirability of maintaining continuity. The trial court acknowledged that plaintiff

had moved quite often. Nevertheless, the trial court
concluded that the child's home was with plaintiff
wherever that may be and that parents could not be
punished for having to move. As mentioned above, an
established custodial environment existed with plain-
tiff in which she provided for the child's daily needs.
While defendant presented testimony that, on at least
one occasion, the child was observed in unsanitary
living conditions, the trial court made no mention of
this incident in its findings of fact. The trial court may
have concluded that the testimony was not credible
or that the testimony related to an isolated incident.
Questions of credibility are best left to the trier of
fact. *Blase v Appicelli*, 195 Mich App 174, 179; 489
NW2d 129 (1992). The evidence as a whole demon-
strated that the child was a normal, active, well-
adjusted six year old and the trial court had no rea-
son to believe that the child would not continue to
thrive under plaintiff's care. Considering the evidence
as a whole, we cannot conclude that the trial court's
findings were against the great weight of the evidence
with regard to factor d.

MCL 722.23(e); MSA 25.312(3)(e) evaluates the per-
manence, as a family unit, of the existing or proposed
custodial home. The trial court found that with regard
to this factor, both plaintiff and defendant had much
to offer. However, the trial court favored plaintiff
because of the fact that, to date, she had provided an
adequate custodial home for the child. The trial court
also considered the fact that plaintiff's new marriage
added stability to plaintiff's life. Therefore, the trial
court's findings were not against the great weight of
the evidence with regard to factor e.

For these reasons, we cannot conclude that the trial court's findings under the Child Custody Act were against the great weight of the evidence. Consequently, we hold that the trial court did not err in denying defendant's petition for change of custody.

Defendant finally argues that the trial court abused its discretion in granting plaintiff's petition for change of domicile because the trial court rejected the testimony of Dr. Zak, the independent psychologist who evaluated the parties and recommended that plaintiff not be allowed to leave the state with the child. We disagree.

A trial court's decision to allow a parent to remove a child from the state is reviewed for an abuse of discretion. *Overall v Overall*, 203 Mich App 450, 458-459; 512 NW2d 851 (1994). An abuse of discretion is found only in extreme cases in which the result is so palpably and grossly violative of fact and logic that it evidences a perversity of will or the exercise of passion or bias. *Dacon v Transue*, 441 Mich 315, 329; 490 NW2d 369 (1992).

This Court, in *Overall*, reiterated the standard for determining whether a change of domicile should be granted. *Overall, supra* at 458-459. Four factors must be considered:

"(1) whether the prospective move has the capacity to improve the quality of life for both the custodial parent and the child; (2) whether the move is inspired by the custodial parent's desire to defeat or frustrate visitation by the noncustodial parent and whether the custodial parent is likely to comply with the substitute visitation orders where he or she is no longer subject to the jurisdiction of the courts of this state; (3) the extent to which the noncustodial parent, in resisting the move, is motivated by the desire to secure a financial advantage in respect of a continuing support obli-

gation; and (4) the degree to which the court is satisfied
that there will be a realistic opportunity for visitation in lieu
of the weekly pattern which can provide an adequate basis
for preserving and fostering the parental relationship with
the noncustodial parent if removal is allowed." [*Id.*, quoting
*Anderson v Anderson*, 170 Mich App 305, 309; 427 NW2d
627 (1988).]

With regard to the first factor, the trial court found
that plaintiff's marriage and move to California had
the potential for improving both the child's and plain-
tiff's quality of life. The trial court noted that plain-
tiff's husband earned a very respectable living and,
judging from his appearance, demeanor, and testi-
mony, he would likely continue to be a success. The
trial court also considered plaintiff's desire to study
the real estate business as a potential improvement to
their quality of life. Plaintiff had testified that a career
in real estate would allow her to work part-time, so
she could fit her schedule around the child's school
schedule. The trial court stressed that it was not obli-
gated to determine whether, in fact, the quality of life
*would* improve, but instead was required to consider
whether it had the *potential* to improve.

Additionally, we note that the trial court did not
reject outright the recommendation of Dr. Zak.
Rather, the trial court found that Dr. Zak confused the
standard for change of custody with the standard for
change of domicile. Dr. Zak opined that it would be in
the child's best interests to deny the change of domi-
cile, but she did not conclude that it was in the best
interests of the child to change custody to defendant.
In fact, Dr. Zak's recommendation was to have plain-
tiff's husband move to Michigan so that the child
could remain in the Owosso community and be raised

by all the people that love and support her.[4] Although defendant's family, particularly his mother, play an important role in this child's life, the role of the extended family cannot be the determining factor in denying a change of domicile. Instead, the trial court must consider whether the move has the capacity to improve the quality of life for both the custodial parent and the child and whether there will be a realistic opportunity to preserve and foster the parental relationship with the noncustodial parent.

The trial court found that the move did have the capacity to improve the quality of life for plaintiff and the child and that extensive summer and holiday visitation would preserve and foster the parental relationship with defendant. The trial court further found, on the basis of plaintiff's allowance of liberal visitation in the past, that there was no evidence to suggest that the move was inspired by plaintiff's desire to defeat defendant's visitation rights or that she would not comply with the trial court's order for visitation. Nor did the trial court find that defendant's resistance to the move was motivated by a desire to secure a financial advantage.

On the basis of the evidence presented, we cannot conclude that the trial court's decision to grant a change of domicile was an abuse of discretion.

Affirmed.

J. W. FITZGERALD, J., concurred.

---

[4] Dr. Zak would have plaintiff's new husband give up a lucrative career and move to Michigan to be with plaintiff. However, plaintiff's husband testified during the hearing that he would not be able to find a comparable job with the same potential for growth in Michigan.

Holbrook, Jr., P.J. (*dissenting*). I respectfully dissent. This case centers on the parties' minor child, Jayce Lyn Jordan, born March 31, 1993.

The majority concludes that because the court originally erred in entering the July 28, 1997, order without first making an independent determination regarding the best interests of the child, it therefore did not err in subsequently setting aside that order. *Ante*, p 22-24. I disagree. In support of this conclusion, the majority cites my authored opinion in *Lombardo v Lombardo*, 202 Mich App 151; 507 NW2d 788 (1993). As its author, I believe that the majority has misread that opinion.

In *Lombardo*, the parents had come to an impasse concerning the proper educational setting for their minor son. The lower court determined that because the defendant father had sole physical custody of the boy, he alone had the authority to decide into what educational program the boy would be enrolled. *Id.* at 153. We disagreed, concluding that a "court should not relinquish its authority to determine the best interests of the child to the primary physical custodian." *Id.* at 160. The case did not involve a stipulated order transferring custody of the boy, nor was there an issue about any stipulation reached between the parties that would limit the court's ability to determine the best interests of the child. Further, *Lombardo* specifically "conclud[ed] that a trial court must determine the best interests of the child in resolving *disputes* concerning 'important decisions affecting the welfare of the child' that arise between joint custodial parents." *Lombardo*, *supra* at 160, quoting MCL 722.26a(7)(b); MSA 25.312(6a)(7)(b) (emphasis added).

The majority also relies on the majority opinion in
*Napora v Napora*, 159 Mich App 241; 406 NW2d 197
(1986). To the extent that *Napora* indicates that
where an established custodial environment exists,
divorced parents cannot agree to change their cus-
tody arrangement without first having the court deter-
mine if such a change is within the best interests of
the child, I must disagree with its analysis. Section 7
of the Child Custody Act[1] states in pertinent part:

> (1) If a child custody *dispute* has been submitted to the
> circuit court as an original action under this act or has
> arisen incidentally from another action in the circuit court
> or an order or judgment of the circuit court, for the best
> interests of the child the court may do 1 or more of the
> following:

> \*      \*      \*

> (c) Modify or amend its previous judgments or orders for
> proper cause shown or because of change of circumstances
> until the child reaches 18 years of age and, subject to sec-
> tion 4a, until the child reaches 19 years and 6 months of
> age. The court shall not modify or amend its previous judg-
> ments or orders or issue a new order so as to change the
> established custodial environment of a child unless there is
> presented clear and convincing evidence that it is in the
> best interest of the child. [Emphasis added.]

I believe, as did the dissenting judge in *Napora*, that
the plain language of § 7 indicates that the revisiting
of the best interest analysis is required only where a
"child custody dispute" has arisen. See *People v
Nimeth*, 236 Mich App 616, 620; 601 NW2d 393 (1999).
When the parties are in agreement regarding a modifi-
cation of the custodial arrangement, I believe the

---

[1] MCL 722.27; MSA 25.312(7).

court has the authority, but is not bound, to accept the parties' stipulation without first specifically reexamining the best interest factors. See *Dick v Dick*, 210 Mich App 576, 584-585; 534 NW2d 185 (1995).[2]

---

[2] As the United States Supreme Court observed in *United States v Turkette*, 452 US 576, 580; 101 S Ct 2524; 69 L Ed 2d 246 (1981): "Of course, there is no errorless test for identifying or recognizing 'plain' or 'unambiguous' language." It is not all that unusual—indeed, it is quite common—for members of a court to disagree on "plain meaning" of the words in a given statute. Lasky, *Perplexing problems with plain meaning*, 27 Hofstra L R 891, 910 (1999) (and cases cited therein); Taylor, *Structural textualism*, 75 BU L R 321, 356 (1995) (and cases cited therein). This is another example of such a disagreement.

The majority notes that my conclusion that a court has the authority, but is not bound, to accept a parental stipulation regarding modification of a custodial arrangement is at odds with the plain meaning of § 7. *Ante*, n 1, pp 22-23. In support of this assertion, the majority quotes from subsection 7(1)(c). *Id*. It is a fundamental tenet of statutory construction that every word and every clause of a statute must be read in the context of the entire statute so as to produce an harmonious whole. *Weems v Chrysler Corp*, 448 Mich 679, 699-700; 533 NW2d 287 (1995); *Gumma v D & T Constr Co*, 235 Mich App 210, 218; 597 NW2d 207 (1999). Section 7 is divided into six subsections. Each of these six subsections is tied together by § 7's introductory clause, which I have already quoted. As this clause indicates, the six judicial responses authorized in subsections 7(1)(a)-(f) arise in the context of a "child custody *dispute*" that has been submitted to the circuit court. Accordingly, the mandatory limitations placed on the circuit court in subsection 7(1)(c) apply only in the context of a custody dispute. Certainly, if the Legislature had wanted to so circumscribe the circuit court's authority to modify a custody arrangement in the absence of parental agreement, it would not have included subsection 7(1)(c) in this list. It is not for the courts to determine that an honorable and broader social purpose could be served if the statute had been designed differently. Scalia, A Matter of Interpretation: Federal Courts and the Law (New Jersey: Princeton University Press, 1997), p 23. Rather, it is the role of the judiciary to reasonably construe the text of a statute and apply it accordingly. *Id*.

Additionally, I believe that recognition of a court's authority to accept a modification offered by a child's parents furthers the laudable goals of minimizing the state's role in decisions involving family life and promoting cooperation between divorced parents in matters involving their children.

Let me also make clear that I do not believe a court should blindly accept a parental agreement modifying custodial arrangements. I would not bind the court's hands in such a fashion. In the same vein, I do not believe § 7 binds the court's hands with respect to a parental agreement to change a custodial arrangement in the absence of a dispute between

In the case at hand, plaintiff and defendant had reached an agreement regarding custody, the substance of which is embodied in the July 28, 1997 order.[3] As another panel of this Court observed in *Koron v Melendy*, 207 Mich App 188, 191-192; 523 NW2d 870 (1994):

> While it is true that a trial court is not bound by the parties' stipulations or agreements regarding child custody, *Napora v Napora*, 159 Mich App 241, 245; 406 NW2d 197 (1986), the court is not precluded from accepting the parties' agreement and including it in the orders of the court. Implicit in the trial court's acceptance of the parties' custody and visitation arrangement is the court's determination that the arrangement struck by the parties is in the child's best interest.

> *          *          *

> ...Accordingly, we hold that in cases where the parties are in agreement regarding custody and visitation and present the court with such an agreement, the trial court need not expressly articulate each of the best interest factors.

While the *Koron* case involved the entry of an original custody agreement and not a modification, I believe the reasons articulated by the *Koron* Court also support the acceptance of the stipulation in the

---

the parents. As with judicial acceptance of an original custody arrangement, implicit in a court's acceptance of a modification agreement is an acknowledgment that the agreement is in the child's best interest.

[3] While I agree with the reasoning set forth by the dissenting judge in *Napora*, I do not agree with his result. The facts of that case indicate that a dispute did indeed arise between the parties *before* the stipulation was incorporated in an order of the court. Thus, while a stipulation existed regarding a change in custody, the court was not bound to follow it, and indeed was required by § 7 to review the issue of the best interests of the child, because of the existence of that dispute. Again, this is not the situation in the case at hand, where the dispute arose after the July 28, 1997, order was entered.

case at hand. *Id.* at 191-193. Indeed, the *Koron* Court cited as support for its reasoning the *Napora* dissent. *Id.* at 192.[4] I also do not find support in the record that the stipulation was obtained by fraud, mistake, or unconscionable advantage.

Therefore, I believe the court erred in not enforcing the provision in the July 28 order modifying the custody arrangement. I do not, however, believe the court erred in disregarding the provision regarding a change in custody if plaintiff were to "change residence from the Owosso School District . . . ." This provision did have the effect of usurping the court's authority to consider the best interests of Jayce when the court was presented with the current custody dispute. See *Lombardo, supra* at 160.

Accordingly, because the trial court did not begin its analysis of the change of domicile and change of custody petitions with the understanding that the parties had joint legal and physical custody of Jayce, I would remand for reconsideration in light of this custodial arrangement.

As for the issue of the change in domicile, I believe that the court did abuse its discretion in granting plaintiff's petition. *Overall v Overall,* 203 Mich App 450, 458-459; 512 NW2d 851 (1994). As the majority observes, the paternal grandmother's involvement in taking care of Jayce during defendant's parenting time

---

[4] I note that the *Koron* Court remarked that cases cited by the defendant in support of the argument that a trial court is always required to place findings on the record regarding the statutory best interest factors were distinguishable because they involved "modification of the terms of a custody arrangement . . . ." *Koron, supra* at 192. I also note that in the cases cited there was a dispute between the parties regarding the potential modification. *Hoffman v Hoffman,* 119 Mich App 79, 81; 326 NW2d 136 (1982); *Dowd v Dowd,* 97 Mich App 276, 278; 293 NW2d 797 (1980).

was substantial. *Ante*, p 25-26. However, the majority fails to note that the record also indicates that the grandmother had considerable involvement with Jayce during plaintiff's parenting time. The evidence is that plaintiff would often rely on her ex-mother-in-law to care for Jayce, often without advance notice. The strength of Jayce's relationship with her grandmother is typified by an incident that occurred in Dr. Zak's office. Dr. Zak testified that, at one point, Jayce picked up a toy telephone, dialed the grandmother's telephone number, and then began to pretend that she was talking to her grandmother. When asked whether she knew any other telephone numbers, including her parents', Jayce responded that she did not. As Dr. Zak noted in response to a question posed by the court, the paternal grandmother's home "has been [Jayce's] home consistently for her life. I don't think dad's house has been her home, nor do I think mother's house" has been her home.[5]

The majority correctly notes that under the first prong of the *D'Onofrio* test,[6] the role of the Jordan "family cannot be the determining factor in denying a change of domicile." *Ante*, at 31. However, it is a factor in determining "whether the prospective move has the capacity to improve the quality of life" of Jayce. *Anderson v Anderson*, 170 Mich App 305, 309; 427 NW2d 627 (1988). See also *Scott v Scott*, 124 Mich App 448, 452; 335 NW2d 68 (1983) ("The *D'Onofrio* test . . . focuses on the best interest of the custodial parent and child.").

---

[5] This conclusion is supported by testimony by Jayce's first grade teacher that Jayce could not identify where she lived.

[6] *D'Onofrio v D'Onofrio*, 144 NJ Super 200; 365 A2d 27 (1976).

After reviewing the record, I conclude that the purported potential advantages of the move to California for Jayce do not outweigh the existing advantages of remaining in Michigan. It is true that the economic condition of plaintiff's new husband would significantly alter Jayce's life style. I do not believe, however, that this justifies taking Jayce away from both the nurturing and stable atmosphere offered by the Jordan family and the school system in which she has thrived. As for plaintiff's desire to pursue a career in real estate, I am not convinced by the evidence of the plausibility of this opportunity. Plaintiff's testimony regarding her desire to pursue such a career indicates that it was more of a daydream than an actual goal.[7]

I am not unsympathetic to plaintiff's position. She is married to a man who lives in California, and she

---

[7] I believe the following trial excerpt is illustrative:

*Court*: And as far as your proposed employment in the event you move to California, you want to get into real estate?
*Plaintiff*: Yes.
*Court*: And is that something you've tried here?
*Plaintiff*: No.
*Court*: You've not gone to school here?
*Plaintiff*: No.
*Court*: You've not gone after any certification or licensure to become a realtor?
*Plaintiff*: No.
*Court*: So you don't know if you could fare better in Michigan or California selling real estate?
*Plaintiff*: If I could what?
*Court*: Fare better in Michigan than in California if you were to sell real estate?
*Plaintiff*: I guess I don't understand what you're saying.
*Court*: Do you know if you could earn more money selling real estate in Michigan than in California?
*Plaintiff*: I would assume I would earn more in California just because the market is more expensive.

understandably wants to move so that they can live together. However, plaintiff's situation did not just drop out of the sky and fall onto her shoulders. It was her decision to marry without either first applying to the court for a change in Jayce's domicile or securing defendant's agreement to the move. See *Zwernemann v Kenny*, 236 NJ Super 37, 48; 563 A2d 1158 (1988). Indeed, plaintiff's own testimony indicates that this course of action was a calculated risk on her part.

Accordingly, I would reverse the grant of the petition for change in domicile. I would also reverse the denial of defendant's petition for a change in custody and remand for a reexamination of that issue in light of the existence of a joint physical and legal custodial relationship.