*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

MADISON NICOLE IDYLE (DUSTON),

      Plaintiff-Appellant,

v

MARK EDWARD IDYLE,

      Defendant-Appellee.

UNPUBLISHED
July 13, 2023

No. 364080
Macomb Circuit Court
Family Division
LC No. 2019-000384-DM

Before: RIORDAN, P.J., and MARKEY and YATES, JJ.

PER CURIAM.

Plaintiff, Madison Idyle, and defendant, Mark Idyle, are divorced parents of a son, MDI. After both parties remarried, the trial court granted plaintiff the right to relocate from Michigan to South Carolina, with custody of MDI ordered on a month-on-month-off basis. Additionally, the court reserved the right to reevaluate that arrangement when MDI reached school age. Once MDI approached the age at which he would begin attending school, both parties requested that MDI be ordered to attend school in their respective states of residence. After an evidentiary hearing, the court denied both parties' competing requests to modify custody of their minor child and granted defendant's request regarding the child's school enrollment. On appeal of right, plaintiff contends that the trial court erred by: (1) disregarding the parties' agreement governing custody and school enrollment without determining that it was contrary to the best interests of the child; (2) entering an order that altered the child's established custodial environment despite finding that neither party provided clear and convincing evidence supporting that change; and (3) finding that the child's best interests favored placement with defendant during the school year. We affirm.

## I. FACTUAL BACKGROUND

The parties are divorced and share a minor child, MDI. Pursuant to a consent judgment of divorce, the parties initially shared joint legal custody of MDI, with the child's primary residence in plaintiff's home, defendant receiving parenting time on alternating weekends and for various holidays, and defendant paying child support. Before their divorce, the parties lived together in

Macomb, Michigan. Both parties subsequently remarried, defendant to Savanah Idyle (Savanah), and plaintiff to Joshua Duston (Joshua).

In early 2020, plaintiff sought a change of domicile and a modification of parenting time, requesting that she and MDI be allowed to move from Michigan to South Carolina. Later in 2020, the parties agreed to share joint legal and physical custody of MDI and exchange MDI every four weeks until the end of July 2021. Plaintiff could move to South Carolina but would be responsible for transporting MDI during exchanges. The parties intended to revisit the situation after one year. The court entered an order effectuating that agreement (the 2020 agreement) in December 2020.

Just before the 2020 agreement expired in July 2021, defendant moved to modify custody, parenting time, and child support, asserting that it was in MDI's best interests that defendant have primary physical custody, with the child residing and enrolled in school in Michigan, and plaintiff having reasonable parenting time. But plaintiff refused to exchange MDI once the 2020 agreement expired, so defendant filed an amended emergency motion to modify custody, parenting time, child support, determine school enrollment, and immediately return MDI to him. The issues of custody, parenting time, school enrollment, and child support were referred to the Friend of the Court (FOC) for an evidentiary hearing, which took place on December 22, 2021.

By July 2022, the referee had still not ruled on defendant's motion, so the parties entered into a new agreement (the 2022 agreement), which provided that plaintiff "will have primary legal and physical custody of" MDI, who "will attend school in [plaintiff]'s home school district from kindergarten through 12th grade." In August 2022, the referee issued a report and recommendation. The referee found that MDI had an established custodial environment with both parents, neither party submitted clear and convincing evidence to modify custody, and defendant established by a preponderance of the evidence that MDI should be enrolled in school in Michigan. Accordingly, the referee proposed amending parenting time to give defendant physical custody of MDI during the school year and plaintiff physical custody of the child during summer vacation, with the parties splitting holidays and sharing transportation costs, and each receiving limited weekend parenting time in the other parent's state. Specifically, plaintiff received at least one weekend of monthly parenting time during the school year to be exercised in Michigan, and defendant received at least two weekends of parenting time during each summer vacation to be exercised in South Carolina. Because of these changes, the referee declined to grant defendant make-up parenting time for when plaintiff did not exchange the child in July 2021. The referee also stated that these changes would not alter the child's established custodial environment with both parents.

Plaintiff objected to the referee's recommended order and sought de novo review. Plaintiff challenged the referee's finding that an established custodial environment existed with both of the parents and asserted that she was the "point person" for MDI's care. Plaintiff also contested the referee's findings regarding several of the best-interest factors. Additionally, plaintiff insisted that there were significant changes in the parties' circumstances since the FOC hearing, particularly in light of the long delay between the hearing and the issuance of the referee's recommended order. Beyond that, plaintiff argued that the 2022 agreement should now control the parties' dispute.

After a de novo hearing, the trial court issued an opinion and order on November 16, 2022, concerning custody, school enrollment, parenting time, and child support. The trial court accepted the referee's findings that MDI had an established custodial environment with both parties and that

a preponderance of the evidence supported MDI's school enrollment in Michigan with defendant. As to the findings on specific best-interest factors challenged by plaintiff, the trial court concluded that the referee erred by finding best-interest factor (d) weighed equally between the parties, stating that that factor actually favored defendant. The trial court upheld the referee's findings that factor (h) weighed equally between the parties and factor (j) favored defendant. Thus, the trial court: (1) denied both parties' competing requests to modify custody of MDI; (2) ordered that MDI attend Warren Consolidated Schools in Michigan; (3) amended the parenting-time schedule in a manner consistent with the referee's recommendation (though with some minor changes to drop-off times); (4) denied make-up parenting time to defendant; and (5) required plaintiff to pay defendant child support of $312 per month. Plaintiff now appeals.

## II. LEGAL ANALYSIS

A child-custody order " 'shall be affirmed on appeal unless the trial judge made findings of fact against the great weight of evidence or committed a palpable abuse of discretion or a clear legal error on a major issue.' " *Pierron v Pierron*, 486 Mich 81, 85; 782 NW2d 480 (2010), quoting MCL 722.28. "[A] reviewing court should not substitute its judgment on questions of fact unless the factual determination clearly preponderate[s] in the opposite direction." *Id*. (quotation marks and citation omitted; second alteration in original). Further, in reviewing a trial court's findings, we defer to credibility determinations made by the trial court. *Shann v Shann*, 293 Mich App 302, 305; 809 NW2d 435 (2011). We review a trial court's discretionary rulings in a custody dispute for a palpable abuse of discretion, see MCL 722.28, which occurs "when the trial court's decision is so palpably and grossly violative of fact and logic that it evidences a perversity of will, a defiance of judgment, or the exercise of passion or bias." *Berger v Berger*, 277 Mich App 700, 705; 747 NW2d 336 (2008). We review questions of law in custody disputes for clear legal error. *Vodvarka v Grasmeyer*, 259 Mich App 499, 508; 675 NW2d 847 (2003). "A trial court commits clear legal error when it incorrectly chooses, interprets, or applies the law." *Id*. With these standards in mind, we shall turn to plaintiff's arguments on appeal.

## A. THE 2022 STIPULATED AGREEMENT

Plaintiff argues that the trial court erred by rejecting the 2022 agreement regarding custody and school enrollment without deciding that that agreement was contrary to MDI's best interests. In particular, plaintiff contends that, although courts have discretion to reject an agreement of the parties in custody cases, such a decision must still be made by considering the child's best interests. Plaintiff states that the 2022 agreement properly resolved the disagreements at issue and precluded the trial court from considering them, especially given the court's finding that the proposed schools in both Michigan and South Carolina were appropriate. To the extent that the trial court considered the 2022 agreement, plaintiff insists that it erred by construing the agreement, contrary to its plain language, as merely temporary pending resolution of the dispute and by summarily dismissing the agreement simply because it was reached without counsel and during ongoing litigation. Instead, plaintiff contends that, under *Harvey v Harvey*, 470 Mich 186; 680 NW2d 835 (2004), *Phillips v Jordan*, 241 Mich App 17; 614 NW2d 183 (2000), and similar cases, the trial court had to explicitly consider whether the agreement was in MDI's best interests. But the trial court never did that and, according to plaintiff, this error was not harmless because "the [court]'s subsequent best[-]interest analysis inverted the burden of proof as to any agreement." Ultimately, plaintiff asserts that the

court committed clear legal error by failing to properly respect and evaluate the 2022 agreement, and that reversal is therefore warranted.

Custody disputes ordinarily must be resolved by determining the best interests of the child under the 12 statutory factors in MCL 722.23. *Eldred v Ziny*, 246 Mich App 142, 150; 631 NW2d 748 (2001). Furthermore, our Supreme Court has explained that trial courts are required to "ensure that the resolution of any custody dispute is in the best interests of the child." *Harvey*, 470 Mich at 192. Even if the parties have agreed to a custody arrangement, the trial court must "satisfy itself concerning the best interests of the children." *Id*. at 192-193. Indeed, the child's best interests are "paramount." *Id*. Similarly, this Court has explained that "[t]he trial court cannot blindly accept the stipulation of the parents, but must independently determine what is in the best interests of the child." *Phillips*, 241 Mich App at 21. Accordingly, this Court concluded that the trial court erred by entering a "stipulated order to change custody without making any independent determination regarding the best interests of the child[.]" *Id*. at 22.

Here, the trial court made the following findings concerning the 2022 agreement:

> Plaintiff's argument that [d]efendant's agreement in late July 2022 to allow her to enroll the minor child in kindergarten in South Carolina was supposed to be a final resolution of these issue[s] is not persuasive. Nor does the Court find her testimony credible that [d]efendant told her that he was either unwilling or unprepared to assume the responsibility of enrolling the minor child in school in Michigan. Nothing in the record supports this conclusion other than her self-serving testimony. Rather his decision in late July 2022 demonstrates to the Court that he believed it was in their son's best interest to allow him to start kindergarten in South Carolina because school was scheduled to start in mid-August, he had not yet received the Referee's Hearing Report and Recommendation[,] and he did not know when this Court would make its final determination. He is to be commended for putting the child's interests before his.

We acknowledge that the 2022 agreement's language—particularly that extending the agreement concerning schooling through 12th grade—seemingly refutes the trial court's interpretation of the agreement as temporary pending final resolution by the court. But even if the trial court was wrong in finding that the 2022 agreement was merely temporary, the trial court still did not err by rejecting the 2022 agreement. A trial court is not permitted to "blindly accept the stipulation of the parents," but is required to "independently determine what is in the best interests of the child." *Phillips*, 241 Mich App at 21. Here, the trial court exercised that authority in analyzing the best-interest factors separately from the parties' agreement. See *id*. The trial court did not err in considering the 2022 agreement, but then rejecting plaintiff's argument that that agreement should permanently control MDI's custody.

## B. THE ESTABLISHED CUSTODIAL ENVIRONMENT

Plaintiff faults the trial court for modifying MDI's established custodial environment with both parents despite finding that neither party offered clear and convincing evidence to do so. We conclude that plaintiff waived this issue in the trial court, and thus extinguished any alleged error. Plaintiff, in her objections to the referee's recommendation and in her amended supporting brief,

challenged the finding that MDI had an established custodial environment with both parents, but she did not argue that the referee (or the trial court) committed legal error by applying the incorrect burden of proof to the prescribed changes. Beyond that, during closing arguments at the de novo hearing, plaintiff's counsel explicitly confirmed that plaintiff was "not saying [the referee] applied the law wrong" or challenging the referee's application of statutes and burdens of proof. Instead, she just objected to the referee's "interpretation of the evidence as applied to the statute . . . [a]nd the subsequent change in circumstances." Accordingly, plaintiff waived this issue by conceding that the referee did not err in applying the law or the burdens of proof—the very issue raised here (albeit concerning the trial court) and one that the trial court never addressed because of plaintiff's concession. See *Hodge v Parks*, 303 Mich App 552, 556; 844 NW2d 189 (2014) ("A party cannot stipulate with regard to a matter and then argue on appeal that the resulting action was erroneous."). That waiver takes out of play any error in the application of the law and the burdens of proof by the referee and the trial court, leaving nothing for this Court to review. *Id*.

## C. THE BEST-INTEREST FACTORS

Plaintiff contends that the trial court erred by finding that it was in MDI's best interests to attend school in Michigan (where defendant lives) based on best-interest factors (d), (e), (h), (j), and (k). But plaintiff contests best-interest findings to which she never objected in the trial court, specifically concerning best-interest factors (e) and (k), so we shall review those findings for plain error affecting her substantial rights. *Demski v Petlick*, 309 Mich App 404, 426-427; 873 NW2d 596 (2015). " 'To avoid forfeiture under the plain error rule, three requirements must be met: 1) the error must have occurred, 2) the error was plain, i.e., clear or obvious, 3) and the plain error affected substantial rights.' " *Id*. at 427.

According to plaintiff, the trial court's best-interests analysis "was uniformly one-sided in its interpretation of the facts presented." Plaintiff first insists that the trial court improperly favored defendant under factors (d) and (e),[1] even though defendant relied on his estranged wife Savanah's assistance to support MDI, whereas plaintiff established that her own separation did not affect her parenting ability. Plaintiff next asserts that the trial court failed to properly weigh factor (h), given that MDI at the time had been enrolled in school in South Carolina, was performing well, and was forming friendships in the school and community that would be disrupted by changing to a school in Michigan. Next, with respect to factor (j), plaintiff contends the trial court favored defendant as more likely to promote a bond between the child and the other parent despite evidence indicating otherwise. Finally, concerning factor (k), plaintiff argues that the trial court improperly "gave no credence to [defendant]'s pattern of verbal and emotional abuse toward both the minor child and" plaintiff. We shall address each of these five contested factors in turn.

---

[1] Although plaintiff states that the trial court found both of those factors to favor defendant, it only did so regarding factor (d). In contrast, plaintiff never objected to the referee's finding that factor (e) weighed equally between the parties. Plaintiff also never objected to findings regarding factor (k), which we will discuss later in this opinion.

### 1. FACTOR (D)

Under factor (d), the trial court must consider "[t]he length of time the child has lived in a stable, satisfactory environment, and the desirability of maintaining continuity." MCL 722.23(d). Here, the trial court found that factor (d) favored defendant, seemingly concluding that it was less desirable to have MDI live with plaintiff in South Carolina during the school year. The court stated that both parties were separated from their respective spouses and had appropriate homes for MDI, but the trial court emphasized Savanah's still-active role in the child's life as well as the extended family MDI continued to see in Michigan.

MDI had recently been living primarily with plaintiff and attending kindergarten in South Carolina, but MDI had previously spent equal time with each parent in their respective states. The more substantial support system for MDI, however, is in Michigan, which favors defendant. Both parties are separated, but the trial court found that defendant and Savanah credibly testified about actively working to save their marriage. Savanah still plays an active role in MDI's life, whereas no evidence indicates that plaintiff's estranged husband Joshua or anyone else other than plaintiff does so in South Carolina. Beyond that, MDI has extended family in Michigan, where defendant's family in particular has assisted with childcare in the past and apparently is willing to do so in the future. Also, plaintiff does not have a vehicle, so she must rely on a coworker for transportation. Given these facts, we conclude that the trial court's finding in favor of defendant on factor (d) is not against the great weight of the evidence.

### 2. FACTOR (E)

According to factor (e), the trial court should consider "[t]he permanence, as a family unit, of the existing or proposed custodial home or homes." MCL 722.23(e). The referee determined that this factor weighed equally between the parties. Both parties, while recently moving into new apartments in their respective states, consistently had suitable homes for MDI. Although plaintiff argues that defendant needs Savanah's assistance to care for MDI despite their current separation, that fact should not favor her with respect to permanence under factor (e). Defendant and Savanah continue to work on their relationship, Savanah still spends considerable time in defendant's home and with MDI, and even if Savanah were no longer able to help, defendant maintained he had other relatives who could assist and continue caring for MDI. For these reasons, the finding balancing factor (e) equally was not against the great weight of the evidence and, therefore, cannot constitute plain error affecting plaintiff's substantial rights.

### 3. FACTOR (H)

Under factor (h), the trial court looks at "[t]he home, school, and community record of the child." MCL 722.23(h). The trial court found factor (h) weighed equally between the parties. The trial court observed that MDI started kindergarten in South Carolina just three months earlier, and both parties previously enrolled MDI in preschool programs, read to the child, and enrolled him in outside extracurriculars during their parenting time. The trial court ultimately determined that the child's home, community, and school record was rather limited because of his tender age, and that there was not persuasive evidence to favor one parent over the other. This finding was not against the great weight of the evidence. The vast majority of MDI's time throughout this case was split

between the parties, with no evidence to significantly distinguish MDI's record with either parent during that time.

## 4. FACTOR (J)

Factor (j) directs the trial court to weigh "[t]he willingness and ability of each of the parties to facilitate and encourage a close and continuing parent-child relationship between the child and the other parent or the child and the parents." MCL 722.23(j). The trial court found that factor (j) favored defendant and MDI's school enrollment in Michigan because of plaintiff's unreliability in facilitating telephone contact between MDI and defendant, as well her efforts to limit defendant's time with the child. The trial court particularly reasoned as follows:

> [T]he evidence was persuasive that [p]laintiff acted to disrupt the bond between [d]efendant and the minor child when she unreasonably refused to return the minor child to Michigan for parenting time this past summer. In addition, [p]laintiff's denial of *any* parenting time for [d]efendant Labor Day weekend when she came to Michigan to visit family and celebrate the minor child's birthday, clearly shows that she is unwilling to support the relationship between father and son. Combined with the missed calls [d]efendant credibly testified to—[d]efendant is clearly the parent more inclined to support the bond between the minor child and the other parent.

The trial court further explained that plaintiff's interpretation of the 2020 agreement and her related refusal to complete the exchange of MDI in July 2021 "demonstrated bad faith and clearly was not in the minor child's best interests."

According to plaintiff, the trial court held her responsible for not informing defendant about MDI's extracurricular activities in South Carolina, but defendant did the same to plaintiff and both parties believed that fell outside the ambit of joint-legal-custody matters. Plaintiff also notes that defendant twice enrolled MDI in kindergarten without plaintiff's consent, and once that violated a court order. Beyond that, defendant failed to designate plaintiff "as the child's legal parent in 2021 and omitted her entirely in 2022." Finally, defendant had an aunt prescribe allergy medication for MDI without notice or any explanation to plaintiff.

Plaintiff also faults the trial court for placing improper weight on the four-day delay for her exchange of MDI in August 2021 when the parties failed to agree to a continuing arrangement for the child. Plaintiff insists that she never wrongfully withheld MDI; she simply declined to extend the 2020 agreement of rotating parenting time when it expired. The trial court found that plaintiff exhibited bad faith and, contrary to plaintiff's argument, the trial court stated it was not penalizing either party for enrolling the child in extracurricular activities without the other's knowledge or consent. Although plaintiff accused defendant of enrolling MDI in kindergarten a second time in violation of a court order, he denied ever doing so, and plaintiff did not offer evidence of any such enrollment other than her testimony. Consequently, we construe the trial court's failure to mention any second enrollment by defendant as an implicit credibility determination that this did not occur. To the extent that the parties also disputed whether plaintiff properly facilitated telephone contact between MDI and defendant, we similarly defer to the trial court's credibility determination, which favored defendant.

We also find no error in the trial court's reliance on plaintiff's failure to exchange MDI in July 2021. Despite plaintiff's justification for keeping MDI, her conduct evinced an unwillingness to work with defendant in facilitating and maintaining his relationship with MDI. Plaintiff asserts that she kept MDI because of defendant's refusal to negotiate at the time, but the trial court was in a much better position to evaluate the credibility of her allegations, yet it did not address that fact. Additionally, plaintiff fails to mention or explain her failure to afford defendant contact with MDI over the Labor Day weekend when she was in Michigan with the child. For these reasons, the trial court's finding regarding factor (j) is not against the great weight of the evidence.

## 5. FACTOR (K)

Finally, factor (k) addresses "[d]omestic violence, regardless of whether the violence was directed against or witnessed by the child." MCL 722.23(k). There was no evidence to support factor (k) favoring either parent, so the referee properly found this factor weighed equally between the parties. Defendant admitted yelling at MDI for disciplinary reasons, which Savannah described more as sternly raising his voice, but nothing suggests that this discipline ever escalated into verbal abuse and both parties acknowledged that defendant never physically abused MDI. To the extent plaintiff testified that defendant regularly screamed at her during their coparenting efforts, we defer to the trial court's implicit credibility determination that this either did not occur or did not rise to the level of domestic violence under factor (k). Given the lack of evidence of domestic violence, the trial court's finding that factor (k) was equally balanced is not against the great weight of the evidence, so it cannot constitute plain error affecting plaintiff's substantial rights.

Affirmed.

/s/ Michael J. Riordan
/s/ Jane E. Markey
/s/ Christopher P. Yates

-8-