# STATE OF MICHIGAN

# COURT OF APPEALS

JOAN GATES,

        Plaintiff-Appellee,

v

RODNEY JAMES KADOGUCHI,

        Defendant-Appellant.

UNPUBLISHED
February 7, 2017

No. 330778
Wayne Circuit Court
LC No. 03-341533-DM

Before: SERVITTO, P.J., and STEPHENS and RONAYNE KRAUSE, JJ.

PER CURIAM.

In this child custody action, defendant appeals as of right the trial court's order granting plaintiff sole physical and legal custody of the parties' minor children, RK (date of birth 4/6/99), MK (date of birth 2/10/01), and JK (date of birth 4/15/03), and suspending defendant's parenting time pending his completion of family therapy and a determination by a medical professional that parenting time is appropriate. We affirm the trial court's custody, suspension of parenting time, and family therapy orders, but remand for the trial court to conduct periodic hearings to determine how family therapy is progressing and whether a medical professional believes that parenting time should be reinstated.

This case began with the divorce of plaintiff and defendant in 2005. As part of that divorce judgment, the parties shared legal and physical custody of the children. That remained unchanged until October 31, 2012, when the trial court entered an order granting defendant sole legal and physical custody of the children. Plaintiff appealed that custody order and this Court affirmed. *Gates v Kadoguchi*, unpublished opinion per curiam of the Court of Appeals, issued November 14, 2013 (Docket No 313829). After the trial court's order was affirmed, defendant moved the trial court to grant him permission to relocate to Kentucky with the children. The trial court granted that order, finding that binding case law provided it no power to do otherwise, considering that defendant had sole custody. In the beginning of January 2014, defendant and the children moved to Kentucky to live with defendant's fiancée.

Almost immediately upon moving, the interaction between the parties regarding the children became more contentious. Indeed, from January 2014 to June 2015, plaintiff and defendant engaged in two verbal and slightly physical altercations in front of the children, and defendant, in a situation that began at his Kentucky home, got physically involved with both JK and RK while MK was in the vicinity. That scuffle between defendant and the children led to a

-1-

Kentucky Cabinet for Health and Family Services (CHFS) investigation. During that investigation, the children were kept from defendant's home by CHFS officials for a few hours. Eventually, defendant was cleared by the investigator and the children were able to return home.

Eventually, however, plaintiff became aware of the altercation and moved the trial court to modify custody of the children in her favor. The trial court held an evidentiary hearing on that motion and, in December 2015 determined that it was in the best interests of the children that plaintiff have sole legal and physical custody of them. The trial court also ordered that defendant's parenting time was to be suspended until defendant complied with family therapy and the therapist determined that the parent-child relationship had been repaired. Immediately thereafter, defendant moved to change custody of the children back to him, which was denied for failure to meet the threshold. He again moved the trial court for custody to be returned to him in February 2016, which was also denied. Defendant now appeals.

This Court applies "three standards of review in custody cases." *Vodvarka v Grasmeyer*, 259 Mich App 499, 507; 675 NW2d 847 (2003), quoting *Phillips v Jordan*, 241 Mich App 17, 20; 614 NW2d 183 (2000). "Findings of fact, such as the trial court's findings on the statutory best-interest factors, are reviewed under the 'great weight of the evidence' standard." *Dailey v Kloenhamer*, 291 Mich App 660, 664; 811 NW2d 501 (2011). In other words, "a reviewing court should not substitute its judgment on questions of fact unless they clearly preponderate in the opposite direction." *Fletcher v Fletcher*, 447 Mich 871, 878; 526 NW2d 889 (1994) (internal quotations omitted). Meanwhile, "[d]iscretionary rulings, such as to whom custody is awarded, are reviewed for an abuse of discretion." *Dailey*, 291 Mich App at 664. "An abuse of discretion exists when the trial court's decision is 'palpably and grossly violative of fact and logic[.]' " *Id*. at 664-665, quoting *Fletcher*, 447 Mich at 879. "Lastly, the custody act provides that questions of law are reviewed for 'clear legal error.' " *Fletcher*, 447 Mich at 881, quoting MCL 722.28. A trial court commits "clear legal error" where it "incorrectly chooses, interprets, or applies the law[.]" *Id*. In sum, "in child-custody disputes, 'all orders and judgments of the circuit court shall be affirmed on appeal unless the trial judge made findings of fact against the great weight of evidence or committed a palpable abuse of discretion or a clear legal error on a major issue.' " *Dailey*, 291 Mich App at 664, quoting MCL 722.28.

Defendant first argues that the trial court's finding that there was proper cause or a change of circumstances warranting a change in custody from him to plaintiff was against the great weight of the evidence. We disagree.

In Michigan, the Child Custody Act, MCL 722.21 *et seq*., "applies to all circuit court child custody disputes and actions, whether original or incidental to other actions." *Pierron v Pierron*, 486 Mich 81, 85; 782 NW2d 480 (2010), quoting MCL 722.26(1). When presented with a motion to modify custody, the trial court is only permitted to actually consider the change in custody "if the movant establishes proper cause or a change in circumstances." *Shann v Shann*, 293 Mich App 302, 305; 809 NW2d 435 (2011), citing *Rossow v Aranda*, 206 Mich App 456, 458; 522 NW2d 874 (1994). This requirement found at MCL 722.27 was included in the Child Custody Act "to minimize unwarranted and disruptive changes of custody orders, except under the most compelling circumstances." *Corporan v Henton*, 282 Mich App 599, 603; 766 NW2d 903 (2009). "Accordingly, a party seeking a change in the custody of a child is required,

as a threshold matter, to first demonstrate to the trial court either proper cause or a change of circumstances." *Id*.

This Court has held that, "to establish a 'proper cause' necessary to revisit a custody order, a movant must prove by a preponderance of the evidence the existence of an appropriate ground for legal action to be taken by the trial court." *Vodvarka*, 259 Mich App at 512. This Court clarified that requirement by specifying that an "appropriate ground" is typically "relevant to at least one of the twelve statutory best interest factors, and must be of such magnitude to have a significant effect on the child's well-being." *Id*. When considering the alternate possibility of a "change of circumstances," this Court is required to view how the situation of the child has changed since the last custody order. *Corporan*, 282 Mich App at 604. Stated differently, "a movant must prove that, since the entry of the last custody order, the conditions surrounding custody of the child, which have or could have a *significant* effect on the child's well-being, have materially changed." *Vodvarka*, 259 Mich App at 513 (emphasis in original). This Court clarified that not just any change would suffice under the aforementioned rule, because "there will always be some changes in a child's environment, behavior, and well-being." *Id*. When considering the changes in conditions, this Court gauges the relevance of the facts presented under the statutory best interest factors. *Id*. at 514. While this Court is permitted to consider "evidence of the circumstances existing at the time of and before entry of the prior custody order[,]" it must do so only for comparison's sake, and "the change of circumstances must have occurred *after* entry of the last custody order." *Id*. (emphasis in original).

Considering the aforementioned law, this Court must consider whether there was proper cause or a change in circumstances to warrant a review of the trial court's prior custody order – the 2012 order granting sole custody in favor of defendant – in light of the statutory best interest factors. See *id*. at 512-514. Given this, it is important to consider the statutory best interest factors in their entirety. MCL 722.23.

Although the trial court did not identify specifically what facts it considered when determining that there had been proper cause or a change of circumstances, it is clear that the trial court was aware of and considered the twelve best interest factors set forth in MCL 722.23, given the colloquy between the trial court judge and defendant prior to the start of the November 2015 evidentiary hearing on plaintiff's motion for change of custody. Defendant expressed concern about having the minor children's testimony being considered by the trial court if they were not going to be called as witnesses and thus not subject to cross-examination. The trial court judge stated that she had talked to the children about their preference as to where they would like to live, only, and that the preference expressed was only "one-twelfth of this Court's decision."

Moreover, the record reveals that the factual finding by the trial court was not against the great weight of the evidence. Since the last custody order, which was entered in 2012, the children have witnessed defendant argue with plaintiff, defendant have physical contact with plaintiff, and defendant engage physically with JK and RK. That last fight between defendant, JK, and RK precipitated not only a CHFS investigation of defendant, but also the present motion for a change of custody. The children were kept from returning home by CHFS while the investigation took place. That physical altercation relates to at least two of the best-interest factors, including MCL 722.23(d) (the length of time the children have lived in a stable,

satisfactory environment, and the desirability of maintaining continuity), and (k) (domestic violence). Specifically, the fight between defendant and his children revealed that the atmosphere at defendant's home was not "stable" or "desirable." MCL 722.23(d). Rather, defendant exhibited a quick temper that led to violence, exhibited by defendant pulling JK into the hallway by his arm, wrapping his hands around JK's neck, and pushing RK into the wall. Those actions against JK led to visible markings on his arms and neck. Not only were the two boys physically involved, but MK was there watching while it occurred. Indeed, MK's recording of the altercation was played into the trial court record. Living with a parent that has a temper and exhibits the ability to engage in physical violence toward his children is not "stable" or "desirable" in any manner. MCL 722.23(d). Not only did the situation become unstable and undesirable, but the children were also subject to, and witness to, domestic violence. MCL 722.23(k). Being involved in such actions, as stated by MCL 722.23(k), is not in the best interests of the children.

Not only does the proper cause or change of circumstances have to relate to the statutory best interest factors, but it must also show that "the conditions surrounding custody of the child, which have or could have a *significant* effect on the child's well-being, have materially changed." *Vodvarka*, 259 Mich App at 513 (emphasis in original). The altercation with defendant could have had a significant effect on the children's lives. Indeed, it appears that after that altercation took place, the children decided that they no longer wanted to live with defendant. When the 2012 custody order was entered, the children wanted to live with defendant, did not express fear of spending time with him and had not been subjected to or witnessed physical violence by defendant. Given this situation, and its relationship to the best interest factors (d) and (k), the trial court's finding that proper cause or a change in circumstances existed was not against the great weight of the evidence. *Vodvarka*, 259 Mich App at 513-514; MCL 722.23(d), (k).

Defendant suggests that this Court should reverse the trial court's ruling because the CHFS investigation arising out of the May 2015 altercation led to no findings of danger, abuse, or neglect with respect to defendant. However, this Court has previously held that just because a CPS investigation was dismissed without negative findings did not mean that the events that led to CPS involvement "did not constitute a sufficient basis for finding proper cause or a change of circumstances." *Shann*, 293 Mich App at 306.

Defendant next argues that the trial court improperly weighed the best interest factors, and in so doing, abused its discretion in granting sole custody to plaintiff. Once again, we disagree.

"Once a party has met the initial burden of showing a change in circumstances or proper cause to revisit the custody order, the next step is for the circuit court to determine the applicable burden of proof for the custody hearing." *Dailey*, 291 Mich App at 666-667. Where the trial court determined that there was a custodial relationship, there could only be a change of custody if there was "clear and convincing evidence that modification was in the child's best interest." *Id*. at 667.

"In determining whether a change of custody is in the best interests of a child, the best-interest factors set forth in MCL 722.23 are the appropriate measurement." *Riemer v Johnson*,

311 Mich App 632, 641; 876 NW2d 279 (2015). When a trial court considers those factors in making its decision, it must "explicitly state its findings and conclusions regarding each factor" on the record. *Id.*, quoting *LaFleche v Ybarra*, 242 Mich App 692, 700; 619 NW2d 738 (2000).

Defendant challenges the trial court's determination regarding essentially all of the listed factors. Beginning with the first factor, the trial court was required to consider "[t]he love, affection, and other emotional ties existing between the parties involved and the child[ren]." MCL 722.23(a). The trial court found that this factor favored plaintiff. Specifically, the trial court found that while defendant had a loving and affectionate relationship with his children for part of their time living in Kentucky, that relationship had diminished essentially to the point of non-existence right before the evidentiary hearing. Meanwhile, the trial court found that plaintiff has always maintained love and affection for the children.

This decision by the trial court was supported by evidence produced on the record. There was no testimony provided by either party that plaintiff's relationship with the children was in any way lacking in affection or love. Meanwhile, there was evidence that defendant's relationship with the children had faltered. The physical altercation between defendant and one of the children aside, the record revealed that defendant attempted to visit the children immediate before the evidentiary hearing, but that the visit went so poorly that the bailiff supervising the meeting felt he had to end it. The trial court noted that defendant almost immediately asked JK about any self-harming that might have occurred since they had moved back to Michigan, rather than giving hugs or engaging in casual, light-hearted conversation. Furthermore, plaintiff testified that the children exhibited signs of fear and stress when presented with the possibility of seeing defendant in person. This fear and hesitancy was observed by the trial court during defendant's attempt to visit with the children after not seeing them for several months. The record reveals support for the trial court's decision that this factor favored plaintiff.

Defendant argues that the trial court's finding that his bond with the children had been broken was against the great weight of the evidence. Defendant asserted that his bond with the children remained strong, especially while living in Kentucky, and it was only the trial court's order stopping him from seeing the children on a regular basis that created the situation that the trial court considered a broken bond. The record, however, reveals testimony from plaintiff that the children were afraid and stressed when faced with the possibility of visiting with defendant, and testimony that defendant's opportunity to visit with the children before the hearing lasted only five minutes, even when the trial court provided for an hour and defendant had not seen the children for several months. And, the trial court observed that defendant struggled with engaging in even the most rudimentary conversation with the children, immediately raising issues that were dark and disturbing in nature, rather than attempting to lighten the mood. Given all of this, the trial court's finding that the bond between the children and defendant was broken was not against the great weight of the evidence. See *Dailey*, 291 Mich App at 664. Additionally, the trial court's finding that this factor favored plaintiff was clearly supported by the record, and therefore, was also not against the great weight of the evidence. See *id.*; MCL 722.23(a).

The next factor requires consideration of "[t]he capacity and disposition of the parties involved to give the child[ren] love, affection, and guidance and to continue the education and raising of the child in his or her religion or creed, if any." MCL 722.23(b). The trial court found

that this factor favored plaintiff. The trial court relied heavily on the fact that defendant was provided an opportunity to visit with the children one week before the hearing, but chose not to so that he could drive home. The trial court also noted that, when defendant actually met with the children on the morning of the hearing, he struggled to engage in an appropriate conversation. Instead, defendant almost immediately raised difficult issues with the children, despite not having seen them for several months.

Defendant argues that this factor should have favored him, because he made sure the children were going to therapy upon moving to Kentucky so that they could better adjust to the move, and that he and the children engaged in several family activities together. While that might be true, defendant failed to recognize the factual basis upon which the trial court's decision relied. The trial court considered that defendant left Michigan without seeing his children before the evidentiary hearing. That fact supports the trial court's determination defendant no longer had either the "capacity of disposition" to provide love and affection for the children. Stated differently, if it was within defendant's capacity or was his disposition, to care for the children in that way, he would have chosen to stay in Michigan until he could visit with his children. His failure to do so caused the trial court to weigh this factor against him. That decision, as well as the failed conversation before the hearing, exhibited defendant's lack of capacity of disposition to provide love and affection for the children, and therefore, the decision by the trial court weighing that factor against defendant was not against the great weight of the evidence. See *Dailey*, 291 Mich App at 664; MCL 722.23(b).

Pursuant to MCL 722.23(c), this Court must next consider "[t]he capacity and disposition of the parties involved to provide the child[ren] with food, clothing, medical care or other remedial care recognized and permitted under the laws of this state in place of medical care, and other material needs." The trial court also found that this factor weighed in favor of plaintiff. In so deciding, the trial court referenced that plaintiff was employed as a registered nurse, while defendant was unemployed. The trial court noted that defendant testified that he was receiving some form of disability aid for his back problems, but had not provided any documentary proof.

Defendant argues that this factor should have weighed in his favor because, while the children were living with him in Kentucky, they had everything provided for them, went to doctors' appointments as needed, and were up to date on vaccinations. While that may have been true, the question presented before this Court is whether the record supports the trial court's determination. Here, it plainly does. Defendant testified that he was unemployed and that he relied on his fiancée, government assistance, and child support for his income. Meanwhile, there was testimony from plaintiff that she was employed full-time as a registered nurse and had been keeping up with her child support payments while the children were living in Kentucky. That evidence supported the trial court's decision that plaintiff's capacity to provide for the children was greater and more stable than defendant's comparable ability. As such, the trial court's finding that this factor favored plaintiff was not against the great weight of the evidence. See *Dailey*, 291 Mich App at 664; MCL 722.23(c).

Next, MCL 722.23(d) requires consideration of "[t]he length of time the child has lived in a stable, satisfactory environment, and the desirability of maintaining continuity." The trial court determined that this factor weighed in favor of plaintiff. The trial court relied on evidence that the situation in Kentucky was not "stable" or "satisfactory," but instead, was deteriorating into

violence and anger. Specifically, the trial court held that the issue that occurred in May of 2015 with JK and RK was not an isolated incident, but rather, was a build-up of tensions and anger over the years. Meanwhile, the trial court found that the children had established a steady and desirable environment at plaintiff's home since moving there in June of 2015.

Defendant argues that this factor should have favored him because he owned a home large enough to fit the entire family, while plaintiff was living in a two-bedroom apartment. Despite these arguments, the factual record provided during the hearing supported the trial court's findings. Quite frankly, there was no testimony or documentary evidence provided that suggested the environment at plaintiff's home was anything but stable and satisfactory. Meanwhile, testimony from plaintiff established that at defendant's home in Kentucky, the children were subject to an environment where defendant was quick to anger and oftentimes violent. Most telling of all of the evidence was the recollection of the event that occurred in May of 2015 found in the CHFS report prepared during the CHFS investigation. Specifically, JK recalled being pulled by the arm and choked, RK stated that he was pushed into the wall, and MK reported that she witnessed all of that and recorded it. Those facts supported the trial court's determination that the living environment in Kentucky was not stable or desirable, and therefore, the trial court's finding that this factor weighed in favor of plaintiff was clearly not against the great weight of the evidence. See *Dailey*, 291 Mich App at 664. MCL 722.23(d).

The next factor requires consideration of "[t]he permanence, as a family unit, of the existing or proposed custodial home or homes." MCL 722.23(e). The trial court determined that this factor did not weigh in favor of either party – noting that defendant lived with his fiancée while plaintiff lived with her other son. Defendant argues that this factor should have weighed in his favor because he lived with his fiancée who he loved and intended to marry, while plaintiff was going through her second divorce. The only evidence on the record for the trial court's consideration is that both parties lived in a home with their children and one other person – defendant with his fiancée and plaintiff with her other son. As such, the record clearly supports the trial court's finding that this factor did not weigh in either party's favor, and therefore, that finding was not against the great weight of the evidence. See *Dailey*, 291 Mich App at 664; MCL 722.23(e).

Pursuant to MCL 722.23(f), we next consider "[t]he moral fitness of the parties involved." The trial court found that this factor favored neither party. Defendant suggests that this factor should have weighed in his favor because he had been involved with the children throughout their lives and because he did not have women in and out of their lives. It appears that defendant suggests that plaintiff, unlike defendant, had men in and out of her and the children's lives since the divorce. However, there is no evidence of that on the record. The lack of evidence regarding moral fitness for either party supports the trial court's finding that MCL 722.23(f) favored neither party, and as such, this finding was not against the great weight of the evidence. See *Dailey*, 291 Mich App at 664; MCL 722.23(f).

Subsequently, MCL 722.23(g) requires consideration of "[t]he mental and physical health of the parties involved." The trial court found this factor weighed in favor of plaintiff because of defendant's back problems. The trial court noted that defendant made allegations during his testimony that plaintiff suffered from bipolar disorder, but that no proofs had been offered. Defendant argues that the trial court committed error in determining that this factor weighed

against him, because he never allowed his back pain to stop him from properly caring for the children. The standard this Court must consider, however, is whether the trial court's decision was against the great weight of the evidence. See *Dailey*, 291 Mich App at 664. The trial court's finding was based on evidence in the record that defendant struggled to sit through the hearing, and that he had previously been on medical leave for his back pain. Considering this, the slight favor of plaintiff (for whom there was no evidence presented that suggested bad health) found by the trial court, was not against the great weight of the evidence. See *id.*; MCL 722.23(g).

Next, we must consider "[t]he home, school, and community record of the child[ren]." MCL 722.23(h). The trial court found that the children excelled in school and in the community no matter where they lived, so this factor favored neither party. Defendant argues that the trial court was correct in finding that the children excelled while living in Kentucky, but failed to take into account that their grades and demeanor were floundering once back in Michigan. In support of that allegation, defendant refers this Court to recent report cards showing deterioration in the children's grades, as well as awards won by the children while living in Kentucky. That evidence that defendant attempts to introduce on appeal was not provided to the trial court during the evidentiary hearing. As such, this Court is not permitted to consider that evidence, because "[t]his Court's review is limited to the record established by the trial court, and a party may not expand the record on appeal." *In re Harper*, 302 Mich App 349, 360 n 3; 839 NW2d 44 (2013), quoting *Sherman v Sea Ray Boats, Inc*, 251 Mich App 41, 56; 649 NW2d 783 (2002). This Court is left only with testimony from plaintiff that all of the children were doing well in school and had minimal absences, as well as testimony from defendant that the children had excelled at school while living in Kentucky. As such, the record reveals support for the trial court finding that this factor did not weigh in either party's favor, and therefore, that decision was not against the great weight of the evidence. See *Dailey*, 291 Mich App at 664; MCL 722.23(h).

The next factor requires consideration of "[t]he reasonable preference of the child[ren], if the court considers the child[ren] to be of sufficient age to express preference." MCL 722.23(i). The trial court held that the children were of sufficient age to express a preference, and the trial court considered the children's preference to live with plaintiff. Defendant argues that this preference was misleading, because the children were made promises by plaintiff in order to change their stated preference, and because plaintiff does not discipline the children. There was no evidence on the record that plaintiff made promises to the children in order to get them to express a preference to move back to Michigan. Nor was there evidence that plaintiff failed to discipline the children.

The record clearly supports reasons for the children to express a preference for living with plaintiff. Defendant had recently exhibited violent tendencies when he grabbed and choked JK and pushed RK against the wall. Further, this preference was witnessed and testified to by plaintiff, who stated that the children exhibited signs of fear and stress when prompted with the possibility of living with defendant in Kentucky again. This alleged fear and stress from the children was clear once defendant attempted to visit with the children before the hearing, and it only lasted 5 of the scheduled 60 minutes before the supervising bailiff determined that the visitation should end. Even more telling is that defendant chose that brief visit to question JK about his history of self-harming, exhibiting why the children would no longer want to live with defendant. Given all of this evidence, the trial court's finding was clearly supported by the

record and was therefore not against the great weight of the evidence.  See *Dailey*, 291 Mich App at 664; MCL 722.23(i).

Pursuant to MCL 722.23(j), we next consider "[t]he willingness and ability of each of the parties to facilitate and encourage a close and continuing parent-child relationship between the child[ren] and the other parent or the child[ren] and the parents."  For that factor, the trial court found that neither party was willing to support a relationship with the opposite parent, so the factor favored neither party.  Defendant argues that the trial court's decision on this factor was in error because he made every effort to keep plaintiff involved in the children's lives.  The record evidence, however, reveals that the trial court's decision was well-supported.  Since moving to Kentucky, defendant has done several things that exhibit his disinterest in keeping plaintiff involved in the children's lives.  Just one week after moving to Kentucky, defendant refused to bring the children with him to Michigan – when he was coming anyway – unless plaintiff agreed to pay him $200 for costs.  Regardless of whether plaintiff was supposed to bear the costs of transportation for that visit under the parenting time order, that decision by defendant clearly revealed that he was fine with plaintiff not seeing her children, or that he wished to make it as difficult as possible for her.  This was borne out by testimony that when he actually brought the children to Michigan, he *still* would not permit plaintiff to come and pick the children up, despite being well-aware and admitting that the weekend was scheduled for plaintiff's parenting time.  Just a few months later, plaintiff showed up in Kentucky to pick up the children on a Thursday at RK's baseball game.  Defendant, believing that plaintiff arrived a day early, refused to release the children to plaintiff for parenting time, and made a scene that required the presence of the police.  Defendant's bare suggestion that he supported keeping plaintiff involved in the children's lives is simply not supported by the record.  Moreover, the record does support the trial court's finding that neither party had the intention of keeping the other parent involved.  Therefore, the trial court's finding that this factor favored neither party was not against the great weight of the evidence.  See *Dailey*, 291 Mich App at 664; MCL 722.23(j).

Next, this Court must consider "[d]omestic violence, regardless of whether the violence was directed against or witnessed by the child."  MCL 722.23(k).  The trial court found that this factor favored plaintiff because of defendant's violent interaction with JK and RK in May of 2015.  Defendant argues that this decision by the trial court was improper because the trial court improperly determined that there was an open CHFS case against him, and because there was evidence of domestic violence at plaintiff's home from 2011.  Defendant misconstrues the record by suggesting that the trial court considered there to be an open CHFS case against him.  The record plainly reveals from testimony by both plaintiff and defendant, as well as admission of the case summary report of the CHFS investigator, that the investigation into defendant was indeed closed without any findings of danger.  The trial court, throughout the hearing and its subsequent holding, never stated that there was an open CHFS (or CPS) investigation against defendant.  As such, this argument by defendant is not supported by the record.  The record does support, however, that the children were part of defendant's violent behavior – amounting to domestic violence – in May of 2015.  Additionally, despite defendant's arguments that there was domestic violence in plaintiff's home back in 2011, the record reveals no domestic violence involving plaintiff since the most recent custody order was entered in 2012.  Because the trial court and this Court are primarily concerned with actions that have occurred since the most recent custody order (as opposed to before that order), *Vodvarka*, 259 Mich App at 514, defendant's argument is

without merit. As such, the trial court's determination that this factor favored plaintiff was not against the great weight of the evidence. See *Dailey*, 291 Mich App at 664; MCL 722.23(k).

Finally, we must consider "[a]ny other factor considered by the court to be relevant to a particular child custody dispute." MCL 722.23(l). The trial court considered defendant's inability to realize and appreciate the seriousness of the situation. The trial court noted that instead of taking personal responsibility (especially after the failed meeting before the evidentiary hearing), defendant continued to blame all of the issues on plaintiff. Given this inability to address the seriousness of his situation, and to correct the errors in his parenting, the trial court determined that this factor weighed heavily in favor of plaintiff.

With regard to this factor, defendant also argues that the trial court erred by failing to consider pictures of the children while in Kentucky that showed them happy and healthy, or letters from the family therapist in Kentucky that revealed a healthy family relationship between defendant and the children. Considering defendant's allegations regarding the trial court's consideration of the pictures, the record reveals that defendant brought the trial court's attention to the pictures during the hearing and the trial court considered them. This does not negate the fact, however, that the record otherwise supports the trial court's decision, especially where defendant failed to engage with the children immediately before the hearing and blamed that on plaintiff. That testimony by defendant supported the trial court's consideration of this factor. Furthermore, defendant's attempt to introduce letters from the family therapist is improper because these letters were not before the trial court at the evidentiary hearing. *In re Harper*, 302 Mich App at 360 n 3. The trial court's finding that this additional factor favored plaintiff was not against the great weight of the evidence. See *Dailey*, 291 Mich App at 664; MCL 722.23(l).

In sum, the trial court properly determined that the factors found at MCL 722.23(a), (b), (c), (d), (g), (i), (k), and (l), weighed in favor of plaintiff. Meanwhile, the trial court's finding that the factors found at MCL 722.23(e), (f), and (h), favored neither party were also properly supported by the evidence on the record. Considering that eight factors weighed in favor of plaintiff, while four of the factors were neutral, the trial court did not commit clear legal error in determining that plaintiff had established that custody should be changed to provide her with sole legal and physical custody. See *Riemer*, 311 Mich App at 641. To that end, the analysis on this issue belied the apparent argument by defendant that the trial court's custody determination and weighing of the best interest factors was somehow tainted by the trial court's comments to defendant when he moved the trial court to grant permission to relocate. Specifically, defendant introduced testimony that the trial court said that even one mistake on his part would force the trial court to order the children back to Michigan, and that the trial court would be watching him "like a hawk." Despite those statements by the trial court, the previous analysis of the issues reveals that the trial court's determinations and findings of fact were entirely supported by the record. Indeed, if the trial court had actually meant those threats, it would have ordered custody back to plaintiff after the altercation that took place merely one week after the children moved to Kentucky. As such, the trial court's ultimate decision to grant sole legal and physical custody of the children in favor of plaintiff was not "palpably and grossly violative of logic and fact" to render it an abuse of discretion. *Id*.

Defendant also argues that the trial court's order suspending his parenting time was an abuse of discretion. While we do not believe that the trial court abused its discretion in

suspending defendant's parenting time, we do believe a remand is necessary for the trial court to conduct periodic hearings to determine how family therapy is progressing and if a medical professional believes that parenting time should be reinstated.

Like all issues involving child custody, "[o]rders concerning parenting time must be affirmed on appeal unless the trial court's findings were against the great weight of the evidence, the court committed a palpable abuse of discretion, or the court made a clear legal error on a major issue." *Pickering v Pickering*, 268 Mich App 1, 5; 706 NW2d 835 (2005). Pursuant to MCL 722.27a(1), "[p]arenting time shall be granted in accordance with the best interests of the child." With regard to the best interests of children, MCL 722.27a(1) requires that this Court presume that it would be "in the best interests of a child for the child to have a strong relationship with both of his or her parents." The right to parenting time, however, is not absolute. See *Rozek v Rozek*, 203 Mich App 193, 194; 511 NW2d 693 (1993). In that case, this Court noted that "[a] child shall have a right to visitation with a parent unless it is shown on the record by *clear and convincing* evidence that it would endanger the child's physical, mental, or emotional health." *Id*. (emphasis in original), citing MCL 722.27a(3). In other words, "[b]efore an order . . . suspen[ding] [] visitation can enter, the court must find by clear and convincing evidence that visitation would endanger the children's physical, mental, or emotional health." *Id*. at 194-195.

In this case, there was clear and convincing evidence that visiting with defendant "would endanger the child[ren]'s physical, mental, or emotional health." MCL 722.27a(3); *Rozek*, 203 Mich App at 194-195. Defendant engaged in a physical altercation with JK and RK serious enough to leave visible marks. Further, plaintiff testified that the children exhibited fear and anxiety when considering visits with defendant, and the trial court observed that defendant's interaction with the children before the evidentiary hearing was improperly handled by defendant. This evidence was sufficient to support the suspension of defendant's parenting time. In addition, the trial court did not abuse its discretion by requiring him to complete family therapy in Michigan.

The trial court established that it would endanger the children's health to travel to Kentucky with defendant, and the trial court needed a way to ensure that defendant's relationship with the children was repaired. As such, the portion of the trial court's parenting time order directing that defendant attend family therapy with the children was not "so palpably and grossly violative of fact and logic that it evidence[d] a perversity of will, a defiance of judgment, or the exercise of passion or bias[.]" *Berger v Berger*, 277 Mich App 700, 705; 747 NW2d 336 (2008). However, defendant's parenting time has been suspended for a rather lengthy period of time—18 months as of oral argument. Moreover, the trial court's order provides for only one review after 6 months of therapy. A court may impose conditions upon a parent's exercise of parenting time so long as such conditions are in the child's best interests. *Kaeb v Kaeb*, 309 Mich App 556, 569; 873 NW2d 319 (2015). We believe that the trial court should conduct periodic hearings to review the progress of family therapy and to consult with a medical professional as to whether some parenting time should be reinstated. Without a mechanism in place to bring this issue before the trial court on a reasonable, periodic basis, the trial court is effectively denying defendant any parental rights.

Affirmed, in part, as detailed above, but remanded for the trial court to conduct periodic hearings to determine how family therapy is progressing and if a medical professional believes that parenting time should be reinstated. We do not retain jurisdiction.


/s/ Deborah A. Servitto
/s/ Cynthia Diane Stephens
/s/ Amy Ronayne Krause