*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

EWELINA FRANCISZKA SKOWRON,

        Plaintiff-Appellee,

v

MARIUSZ MACIEJ SKOWRON,

        Defendant-Appellant.

UNPUBLISHED
December 22, 2025
10:07 AM

No. 372375
Wayne Circuit Court
Family Division
LC No. 17-100723-DM

Before: YATES, P.J., and BOONSTRA and YOUNG, JJ.

PER CURIAM.

Defendant appeals as of right the order awarding the parties joint legal custody of their minor children, ES and DS; awarding plaintiff sole physical custody of the minor children; modifying defendant's regular parenting time; prohibiting defendant from international travel with the minor children without court approval; and awarding plaintiff $15,000 in attorney fees for defendant's violation of prior court orders. We affirm the trial court's custody determination and international travel prohibition but vacate its attorney-fee award and remand for further proceedings. On remand, the trial court should promptly provide the parties with copies of the report authored by the guardian ad litem.

## I. FACTUAL BACKGROUND

The parties were married in Poland in 2004. They later moved to Michigan, and they divorced in 2017. The divorce judgment provided that plaintiff had sole physical custody of the minor children, and defendant had regular parenting time on alternating weekends and every Wednesday overnight. The divorce judgment contained a provision prohibiting the parties from speaking disparagingly about the other parent in the presence of the children. In early March 2022, to address allegations that surfaced against defendant, the trial court appointed attorney R. Michael Jones to serve as the guardian ad litem (GAL) or lawyer-guardian ad litem (L-GAL) for the children. As discussed later, there is some confusion over Jones's specific role. With minor exceptions, the parties operated under the terms of the divorce judgment until early 2023.

In January 2023, the parties stipulated to a consent order designed to address outstanding parenting-time issues. Under the terms of the consent order, the parties shared joint legal and

-1-

physical custody of the children, as well as equal parenting time, for a trial period of six months (or until July 1, 2023). If the parties agreed that the situation was positive after six months, then the changes outlined in the consent order would become permanent. However, "[i]f within 6 months the cooperation would drastically worsen, and if this change has significant negative impact on [the] children, [then the] parties agree to resume the court case . . . and will request a new court hearing. In such a case, from the day of [the] request for the court hearing, until the court's decision, parenting time shall [revert to the prior arrangement in the divorce judgment]."

In late June 2023, plaintiff, acting *in propria persona*, moved to modify aspects of the consent order, but not the custody or parenting time arrangements. Plaintiff's motion was timely under the terms of the consent order. She requested that the court modify the parenting-time exchange location and asked the court to require the parties to use a parenting-communication application called AppClose to communicate. She also asked that the parties extend the trial period for the consent order by another three months. The basis for the motion was that defendant became aggressive toward plaintiff during parenting-time exchanges and was making unwanted romantic advances toward plaintiff in her home.

A hearing was conducted on the motion before a Friend of the Court (FOC) referee on August 24, 2023. Plaintiff and defendant were both sworn in to testify, but the parties did not call and examine witnesses. At the hearing, plaintiff maintained defendant reverted to the prior parenting-time schedule of his own volition on the basis of the language in the consent order. Defendant, who represented himself at the hearing, argued plaintiff was raising new allegations at the hearing, which was not procedurally proper. The referee concluded that plaintiff demonstrated by a preponderance of the evidence that a change in circumstances existed to support modifying parenting time. The referee recommended the court set aside the consent order, and parenting time would revert to the prior parenting-time schedule for the time being. Put differently, defendant went from having 50-50 parenting time and custody under the consent agreement to a reduction in parenting time and no physical custody. The court entered the order as an interim order, see MCR 3.215(G)(1), and defendant objected timely to the referee's recommendations.[1]

A case-management conference occurred in relation to defendant's objections on September 27, 2023. Before the conference, plaintiff filed a supplemental update, noting that the children's behavior had become "extremely destructive and dangerous" after defendant's parenting time was reduced. During one incident, ES (the parties' teenage daughter) made statements expressing suicidal ideation, and plaintiff called the police. Plaintiff took ES's cell phone as a punishment and found concerning communications between defendant and ES via text messages and via cell phone applications such as Snapchat, which were in the parties' native language, Polish. The messages, which are discussed later, referred to the court case and ES's relationship with plaintiff. Plaintiff translated the messages into English. Plaintiff also filed an emergency objection to the referee's recommendation, which outlined in more detail the various

---

[1] We note defendant's objections were apparently not entered in the trial court register of actions, but there is no dispute that the court accepted and considered the filing, as supported by the court's statements on the record during later proceedings.

messages between ES and defendant. As defendant noted during the hearing, plaintiff did not serve these documents on him until the day of the case-management conference.

During the case-management conference, the trial court considered the messages: "[defendant] is obviously encouraging his daughter to act badly in [plaintiff's] home, the text messages demonstrate that." The court stated, "There's no question in this case based on the exhibits that I have reviewed that I do, I do believe parental alienation is going on." The court scheduled an evidentiary hearing on the pending motion to change custody and parenting time. Pending the hearing, defendant would have supervised parenting time only, and other communication was restricted. Later, while the evidentiary hearing was ongoing, the court permitted defendant to have unsupervised parenting time on Sundays.

A nine-day evidentiary hearing occurred between late January 2024 and May 2024. During the first day of the evidentiary hearing, the trial court noted it received a confidential report from Jones. The court stated it was not required to share the report with counsel, and it would not be admitted as evidence absent a stipulation of the parties. Defendant raised a hearsay objection to plaintiff's admission of the messages with ES, arguing that plaintiff's translations of his messages with ES were inaccurate. In response, the court ordered the parties to split the cost of an official translation of the messages.

After hearing detailed testimony from plaintiff, defendant, and therapists for the children, the trial court issued its ruling on the record in June 2024 (nearly nine months after the court conducted the case-management conference). The court noted proper cause and a change in circumstances were previously found by the referee to revisit parenting time. On the issue of the established custodial environment, the court first found that defendant "undermin[ed]" plaintiff's established custodial environment through his messages with ES and other conduct, which did not create an established custodial environment with defendant. The court found that during the period of the consent order, the established custodial environment may have been with both parties, but plaintiff did not know the extent to which defendant was undermining her established custodial environment. Therefore, the court held that the established custodial environment was with plaintiff and the standard of proof was by a preponderance of the evidence. However, the court noted its ruling would have been the same under a clear-and-convincing standard of proof.

The court found that several best-interest factors favored both parties. But Factors (b) (the capacity and disposition of both parties to provide love, affection, guidance, and religious affiliation), (d) (the length of time the children lived in a stable, satisfactory environment), (h) (the home, school, and community record of the children), (j) (the willingness of the parties to encourage a relationship with the other parent), and (k) (domestic violence) favored plaintiff. The court found that "[defendant's] refusal to recognize [plaintiff's] boundaries, [and plaintiff's] home, exposed the daughter to the home knowing that the [plaintiff's] boyfriend was present there, and admittedly made unwanted physical advance to [plaintiff] in her own home." Thus, a preponderance of the evidence supported that it was in the best interests of the children for plaintiff to have sole physical custody and for the children to have parenting time with defendant every other weekend, on Wednesdays overnight, and on holidays by agreement or via the Wayne County parenting-time schedule. This schedule was a resumption of the parenting time from the judgment of divorce. The court also found that defendant was a flight risk and ruled that "[i]nternational

-3-

travel by the defendant with the children to Poland is not permitted at this time and leave of Court would be required for that."

The court awarded plaintiff $15,000 in attorney fees under MCR 3.206(D)(2)(b), finding that defendant violated the nondisparagement clauses in the divorce judgment and other prior court orders. Although defendant disputed plaintiff's invoices, the court did not conduct an evidentiary hearing or discuss the invoices in detail. This appeal followed. The court later denied defendant's motion to release Jones's report, finding that the latter motion could not be decided while this appeal was pending.

## II. DUE-PROCESS CONSIDERATIONS

Defendant first argues he was deprived of due process of the law during the trial court proceedings. We agree in part, and disagree in part. We conclude that the trial court erred by failing to release Jones's report to the parties following the evidentiary hearing and the court's ruling.

We review de novo the legal question whether a party was afforded due process of law. *Cassidy v Cassidy*, 318 Mich App 463, 500; 899 NW2d 65 (2017). We also review de novo issues of statutory interpretation. *Pueblo v Haas*, 511 Mich 345, 354; 999 NW2d 433 (2023). " 'The primary goal of statutory interpretation is to ascertain the legislative intent that may reasonably be inferred from the statutory language.' " *Woodman v Dep't of Corrections*, 511 Mich 427, 440; 999 NW2d 463 (2023) (citation omitted).

The trial court's custody and parenting-time orders must be affirmed on appeal unless the trial court made factual findings against the great weight of the evidence, committed a palpable abuse of discretion, or committed a clear legal error on a major issue. *Pierron v Pierron*, 486 Mich 81, 85; 782 NW2d 480 (2010); *Shade v Wright*, 291 Mich App 17, 20-21; 805 NW2d 1 (2010). This Court should not substitute its judgment on factual questions unless the factual decision "clearly preponderate[s] in the opposite direction." *Pierron*, 486 Mich at 85 (quotation marks and citation omitted; alteration in original). "Discretionary rulings, including a trial court's decision to change custody, are reviewed for an abuse of discretion." *Kuebler v Kuebler*, 346 Mich App 633, 653; 13 NW3d 339 (2023) (quotation marks and citation omitted). A clear legal error occurs when the trial court chooses, interprets, or applies the law incorrectly. *Id*.

" '[P]arents have a significant interest in the companionship, care, custody, and management of their children, and the interest is an element of liberty protected by due process.' " *Barretta v Zhitkov*, 348 Mich App 539, 554-555; 19 NW3d 420 (2023) (citation omitted). Thus, "[b]ecause the liberty interests at stake when a court seeks to limit or deny parenting time or custody are powerful, 'to satisfy constitutional due process standards, the state must provide the parents with fundamentally fair procedures.' " *Id*. at 555 (citation omitted). Due process in this context generally requires notice and a hearing. *Id*. at 557.

## A.  NOTICE OF THE NATURE OF THE PROCEEDINGS

Defendant first argues he was deprived of due process of the law because he was not notified before the August 24, 2023 hearing of the fact that plaintiff was seeking a modification of custody or parenting time.  We disagree.

Plaintiff's June 29, 2023 motion requested an extension of the equal parenting-time schedule, with modifications such as using a gas station as the parenting-time exchange location and for the parties to use AppClose for their communications.  Plaintiff requested that the court extend the consent order by another three months.  However, during the August 24, 2023 hearing before the referee, plaintiff's counsel explained that since plaintiff filed her motion *in propria persona*, she had "some updates about behaviors of" defendant and the minor children.  She explained that additional events happened in the previous two months that were concerning, including inappropriate communications between defendant and the children about plaintiff's motion and the court case.  Counsel noted that defendant engaged in similar behaviors in the past, and counsel believed there was "extreme mental manipulation" happening.

Defendant, who represented himself at the hearing, indicated he did not appreciate the additional accusations made against him at the hearing and noted he did not have time to prepare his response and adequately respond.  But counsel's statements about the new developments in the case were not a due-process violation.  Plaintiff did not request a change of custody or further modifications of parenting time at the hearing.  Rather, her counsel informed the referee about further incidents that had occurred in the nearly two-month period between when plaintiff filed her motion and the referee heard it.  Defendant, who prepared the consent order himself, was aware of the language of the order going into the August 24, 2023 hearing and acknowledged he reverted to the prior parenting-time schedule of his own volition because he "didn't want to be accused of any wrongdoing."

Defendant also claims a due-process violation occurred in relation to the September 27, 2023 case-management conference because he was served with a copy of plaintiff's supplemental update and emergency motion to modify parenting time on the same day as the case-management conference.  We disagree.

Defendant maintains that the last-minute notice was akin to an ex parte communication to the court.  Defendant contends that the case-management conference was not designed to be a contested hearing, but was reasonably understood by defendant to be administrative in nature.  However, defendant does not cite any legal basis for why the trial court could not consider new developments in the case at the case-management conference.  Defendant's argument also overlooks that the court subsequently conducted a nine-day evidentiary hearing on the new allegations.

Defendant also suggests that the case-management conference should have occurred on September 29, 2023, or later, because the referee's recommendation was not entered by the trial court or served until September 8, 2023.  In defendant's view, the 21-day objection filing deadline had not passed.  Yet defendant represents he filed his objection on September 25, 2023, and does not suggest he intended to file any other documents with the court before September 29, 2023.

Moreover, defendant was aware of the referee's recommendation because he was present during the August 24, 2023 hearing. No due-process violation occurred.

Defendant also takes issue with the fact that plaintiff filed a supplemental update and an emergency motion to modify parenting time before the September 27, 2023 case-management conference but did not serve him with either document until the day of the conference. However, defendant does not indicate what information he was unable to present to the court because of the short notice. And defendant made a substantive argument on the record.

The court noted that it appeared parental alienation occurred on the basis of the messages. The court also noted to defendant, "You testified under oath that you are not disparaging in any way to [plaintiff] and that you're not encouraging the bad behavior, and the text messages show that that testimony was false." The court indicated it was not going to refer the matter to the prosecutor's office but if the court learned of more false testimony, then it might do so.

Defendant suggests these statements had no basis in fact because he did not make false statements on the record. But during the August 24, 2023 hearing, defendant denied any discussions with the children about getting back together with plaintiff, noting: "No. Well, we only talk about like going for ice cream together." He also represented he was "very peaceful" and wanted to cooperate with plaintiff. As it turned out through the messages, as discussed later, defendant was encouraging ES to engage in destructive behaviors in plaintiff's home and was disparaging plaintiff to the children. The court's finding that defendant had made misrepresentations to the court was not erroneous and did not deprive defendant of due process.

Defendant argues that when he asked at the end of the hearing to "resign" from parenting time, it was because of "the emotional impact of a fundamentally unfair process." He argues the court erred by using the statement against him at the evidentiary hearing and in its ruling. However, defendant's request to resign from parenting time came right after he complained about the costs of the litigation. Defendant did not, at any point, indicate he wanted to resign from parenting time because of perceived due-process violations. The court therefore did not commit a legal error by considering defendant's request to resign from parenting time later in the proceedings. In sum, we find no due-process violation on these grounds.

## B. TEMPORARY MODIFICATION OF PARENTING TIME

Next, defendant argues the trial court improperly changed both physical and legal custody of the minor children before conducting an evidentiary hearing, which deprived him of due process. We agree, but because the error was harmless, we affirm.

When a party is seeking to modify an existing custody or parenting-time order, MCL 722.27(1)(c) provides that the movant must establish first that proper cause or a change in circumstances exists. *Lieberman v Orr*, 319 Mich App 68, 81; 900 NW2d 130 (2017). This Court addressed the standards for showing proper cause or change in circumstances relating to requests to modify parenting time in *Lieberman*. If the parent makes the threshold showing of proper cause or change of circumstances, *only then* will the court analyze whether the proposed change is in the best interests of the child. *Id*. 83. In situations in which the child's established custodial

environment would be affected, the moving party must establish that the proposed change is in the child's best interests by clear and convincing evidence. *Id*. at 83-84.

> An established custodial environment exists if over an appreciable time the child naturally looks to the custodian in that environment for guidance, discipline, the necessities of life, and parental comfort. The age of the child, the physical environment, and the inclination of the custodian and the child as to the permanency of the relationship shall also be considered. [*Id*. at 81 (cleaned up), quoting MCL 722.27(1)(c).]

"In a parenting-time matter, when the proposed change would not affect the established custodial environment, the movant must prove by a preponderance of the evidence that the change is in the best interests of the child." *Id*. at 84. Our Supreme Court in *Daly v Ward*, 501 Mich 897, 898 (2017), held that a trial court may only enter an ex parte order upsetting a child's established custodial environment if it first makes the findings required by MCL 722.27(1)(c), which are whether:

> (1) proper cause or a change of circumstances had arisen to warrant revisiting the issues of parenting time and physical custody as established in the judgment of divorce, (2) an established custodial environment existed and whether any potential modifications to parenting time or physical custody would disrupt that established custodial environment, or (3) the evidence supported a finding that any proposed modification was in [the children's] best interests. [*Barretta*, 348 Mich App at 554.]

"When determining whether a proposed change to parenting time would alter an established custodial environment, an important consideration is to what extent the proposed change will decrease a parent's time with the child." *Id*. at 553. "[M]inor modifications that leave a party's parenting time essentially intact do not change a child's established custodial environment, [but] significant changes do." *Lieberman*, 319 Mich App at 89-90.

Defendant first argues that the trial court and referee appeared to rely solely on the language of the consent order to conclude before conducting an evidentiary hearing that custody and parenting time would revert to the arrangement in the divorce judgment. This Court has recognized that parties may enter into stipulated agreements in child custody matters, but "[t]he trial court cannot blindly accept the stipulation of the parents, but must independently determine what is in the best interests of the child." *Phillips v Jordan*, 241 Mich App 17, 21; 614 NW2d 183 (2000). Had the court relied solely on the consent order to modify the parenting-time schedule, without considering independently the best interests of the children, then a finding that the language of the consent order dictated the best interests of the children would have been erroneous.

Defendant also argues that the referee and trial court erred by failing to complete an evidentiary hearing before modifying the parenting-time schedule on a temporary basis pending the evidentiary hearing on the children's best interests. He maintains that he was not given the opportunity to argue his case fully at the August 24, 2023 and September 27, 2023 hearings. He further argues Jones should not have been allowed to weigh in on this analysis because he had no contact with the parties or children in six months.

Defendant's argument regarding the court's temporary parenting-time order has its basis in *Barretta* , 348 Mich App at 556, in which this Court recognized that it is generally improper for a trial court to modify parenting time even on a temporary basis without conducting a hearing on the child's best interests if the trial court's decision to modify parenting time would alter the child's established custodial environment. This Court reasoned that although the trial court can enter ex parte interim orders, the established custodial environment should not be changed without clear and convincing evidence that doing so was in the child's best interests. *Id*. at 555-556. This Court explained that the trial judge should not decide custody issues on the pleadings and FOC referee report alone without an evidentiary hearing. *Id*. at 556. Thus,

> a trial court should not be permitted to circumvent and frustrate the purpose of the law by issuing an ex parte order changing custody without any notice to the custodial parent or a hearing on the issue whether clear and convincing evidence was presented that a change of custody was in the child's best interest. [*Id*. at 557 (quotation marks and citation omitted).]

This Court held that because the trial court's decision to suspend the plaintiff-mother's parenting time altogether had the effect of modifying the award of joint physical custody from the consent judgment of divorce, and the order was not ex parte in nature, an evidentiary hearing was required. *Id*. at 558. This Court further concluded the error was not harmless. *Id*. at 560. Therefore, this Court remanded the case for completion of the evidentiary hearings on custody and parenting time (which were in progress during the period of the appeal). *Id*. at 563. On remand, the trial court would need to determine whether proper cause or change of circumstances existed, and if so, the court would need to determine the existence of an established custodial environment, the appropriate burden of proof, and the child's best interests under the correct legal framework. *Id*. at 563-564.

We agree with defendant that this case is like *Barretta*, in that the interim changes in parenting time amounted to a change in the children's established custodial environment. "A custodial environment can be established as a result of a temporary custody order, in violation of a custody order, or in the absence of a custody order." *Berger v Berger*, 277 Mich App 700, 707; 747 NW2d 336 (2008). At the August and September 2023 hearings preceding the full evidentiary hearing, defendant stated on the record: "I have an established custodial environment with the children and I took very good care of them and we exercise half time with them and there is no reason to change." Plaintiff also conceded as much on the record, stating the established custodial environment was with both parents by the end of the six month period under the consent order. Plaintiff even sought to extend 50-50 parenting time under the consent order because the children expressed they needed to see defendant. The GAL also shared that ES wanted to live with defendant. Although arguably achieved through parental alienation, the record evidence establishes the children looked to defendant for "guidance, discipline, the necessities of life, and parental comfort," MCL 722.27(1)(c), and reducing defendant's parenting time altered the children's established custodial environment.

Nevertheless, this case presents us with the "difficult—if not altogether impossible" task of restoring the status quo of the parties following the allegedly erroneous orders. *Daly*, 501 Mich at 898. In *O'Brien v D'Annunzio*, 507 Mich 976 (2021), our Supreme Court stated it was impossible to effectively remedy the error in entering an order modifying the children's established

custodial environment where 15 months passed before an order following a proper evidentiary hearing. Likewise, here, 10 months after the orders modifying the children's established custodial environment, defendant eventually got the process he was due through a lengthy, nine-day evidentiary hearing where he was represented by an attorney, and where the trial court correctly determined, as we detail below, that sole physical custody with plaintiff was in the children's best interests.[2]

But unlike *O'Brien*, and contrary to defendant's argument on appeal, there is no indication that the court's interim orders affected its final opinion and order. *O'Brien*, 507 Mich at 977 (concluding that an error in modifying the children's established custodial environment before conducting an evidentiary hearing was not harmless considering that the final opinion and order relied on events that occurred in a custodial environment that the court erroneously altered). The court's best-interest analysis does not reveal any statements by the trial court suggesting its ruling on any of the best-interest factors that favored plaintiff had its basis in the fact that defendant's parenting time was reduced or restricted pending the evidentiary hearing. The primary basis for the court's ruling, as discussed later, was defendant's parental-alienation tactics, so defendant cannot demonstrate prejudice. Because the effect of the orders was harmless in the overall best interests analysis, we affirm.

## C. CONFIDENTIAL L-GAL REPORT

Defendant next argues that his right to a fair hearing was affected by the court's receipt and consideration of a confidential GAL or L-GAL report during the evidentiary hearing that was not provided to the parties. We disagree to the extent defendant argues the report had to be provided to the parties for purposes of the evidentiary hearing, but agree that the parties are entitled to a copy of the report now that the court has issued its ruling.

In addition to the standard of review noted earlier, we review evidentiary issues for an abuse of discretion, which occurs in this context "when the trial court's decision is outside the range of reasonable and principled outcomes." *Nahshal v Fremont Ins Co*, 324 Mich App 696, 710; 922 NW2d 662 (2018) (quotation marks and citation omitted).

A GAL and an L-GAL have distinct powers and roles. A GAL is "an individual whom the court appoints to assist the court in determining the child's best interests. A guardian ad litem does not need to be an attorney." MCL 722.22(g). An L-GAL, in contrast, is an attorney appointed under MCL 722.24. MCL 722.22(h). The L-GAL represents the child and has the powers and duties outlined in MCL 722.24. MCL 722.22(h). MCL 722.24(2) specifies that the L-GAL has the powers and duties in relation to the representation as set forth in MCL 712A.17d. MCL 712A.17d outlines the L-GAL's duties to the child, which include (1) obligations of the attorney-client privilege, (2) the requirement to serve as an independent representative of the

---

[2] It is noteworthy that the court originally scheduled the evidentiary hearing for roughly a month after the September case-management conference, but defendant stipulated to adjourn the hearing by three months.

child's best interests, and (3) the need to make determinations and advocate for the child's best interests. See MCL 712A.17d(1).

When ruling on the admissibility of Jones's report, the court cited MCL 722.24(3), which is a provision of the Child Custody Act (CCA), MCL 722.21 *et seq*., that provides:

> In a proceeding in which a lawyer-guardian ad litem represents a child, he or she may file a written report and recommendation. The court may read the report and recommendation. The court shall not, however, admit the report and recommendation into evidence unless all parties stipulate the admission. The parties may make use of the report and recommendation for purposes of a settlement conference.

This statute does not, however, provide that the L-GAL's report may be kept from the parties during or after the evidentiary hearing. And, it appears from the court's statements on the record that the court did not intend to keep the report from the parties following the issuance of its opinion and order.

As defendant recognizes in his brief on appeal, the order appointing Jones creates some confusion over whether he served as a GAL or an L-GAL. However, we conclude Jones was serving as an L-GAL because Jones is an attorney, the order appointing him refers to MCL 722.24, and the court considered him to be an L-GAL.

MCL 722.24(3) is silent on whether and when the report must be provided to the parties. However, there is also no statutory authority for the trial court to withhold the report from the parties indefinitely. The statutory language contemplates that the parties may use the report for purposes of settlement, which indicates that the report must be provided to the parties at some point. Also, the order appointing Jones provided that the copies of his written report should be provided to the attorneys. Jones apparently promised ES that he would keep her statements confidential because ES did not want plaintiff to see the report, but again there is no legal basis for keeping the report from the parties. Therefore, on remand, the trial court must promptly provide the parties with a copy of the confidential report.

III. BEST INTERESTS

Defendant next argues the trial court abused its discretion in relation to its best-interest finding and specifically challenges several best-interest factors. We disagree with defendant's argument.

MCL 722.23 outlines the factors that the trial court must consider expressly when determining if a custody change is in the child's best interests. *Sinicropi v Mazurek*, 273 Mich App 149, 178; 729 NW2d 256 (2006). As noted earlier, in situations in which the established custodial environment would be affected, the moving party must establish that the proposed change is in the child's best interests by clear and convincing evidence. *Lieberman*, 319 Mich App at 83-84. The trial court does not need to give equal weight to the factors and may consider their relative weight on the basis of what is appropriate under the circumstances. *Sinicropi*, 273 Mich App at 184. For each best-interest factor, the court need only make brief, definite, and

pertinent findings, which is sufficient to satisfy the requirements of the court rules and caselaw. See *Foskett v Foskett*, 247 Mich App 1, 12; 634 NW2d 363 (2001); MCR 2.517(A)(2). We apply the great weight of the evidence standard to the trial court's findings of fact, which "should be affirmed unless the evidence clearly preponderates in the opposite direction." *Marik v Marik*, 325 Mich App 353, 359; 925 NW2d 885 (2018) (citation omitted). Although we disagree with the trial court that the interim orders did not change the children's established custodial environment, the trial court stated on the record that the facts met the higher clear and convincing standard as well. As discussed below, that decision was not against the great weight of the evidence.

## A. FACTOR (b)

Factor (b) considers "[t]he capacity and disposition of the parties involved to give the child love, affection, and guidance and to continue the education and raising of the child in his or her religion or creed, if any." MCL 722.23(b). The trial court's finding on this factor was not against the great weight of the evidence considering the ample evidence that defendant was misguiding ES in terms of her behavior while in plaintiff's care. This Court has recognized the concept of parental alienation for purposes of determining the children's best interests, explaining that "there is no reasonable dispute that high-conflict custody disputes frequently involve acts by one parent designed to obstruct or sabotage the opposing parent's relationship with the child." *Martin v Martin*, 331 Mich App 224, 238 n 2; 952 NW2d 530 (2020).

Clear and convincing evidence existed that defendant's capacity to provide guidance to the children was significantly impaired. Following plaintiff's motion to modify the consent order on parenting time, ES sent a message to defendant, stating: "Dear Daddy. We are doing the right thing. She is so angry with [DS] and I. And [we] are intervening with her work [sic]." Defendant responded: "[G]reat. Let her break down. Let her know that [s]he can't win against three of us." Defendant admitted that his messages were referring to plaintiff.

In another message, from early August 2023, defendant directed ES, "[D]on't go anywhere with her for the weekend until she gives in." In yet another message, defendant told ES, "I hope that you manage to win." He added, "I hope she goes crazy today thanks to you." In another message, defendant told ES: "Keep fighting as much as you can. Don't give in even one step." He explained in another message that plaintiff "stole" the marital home from him and that "I won't give it up that easily." He also told ES that plaintiff cheated on him throughout their marriage. Defendant also told ES that plaintiff was "fighting, too."

In yet another text-message exchange, defendant stated: "A girl like you should enjoy her holidays and not fight with [a] mentally ill caregiver. I'm glad you found a way to deal with it. You can also attack her for her boyfriend." Defendant acknowledged he was referring to plaintiff's boyfriend in the message. In yet another exchange, defendant encouraged ES: "Fight as hard as you can. You see how difficult it is, and you know, that she doesn't care about you at all, neither your health or your future. Only herself. That's why it's so difficult. Be strong and win. Don't give up even a step."

While defendant disputed the accuracy of some of the translations of the messages, this Court must afford special deference to the trial court's credibility determinations, including in relation to defendant's testimony that he did not intend to alienate ES from plaintiff. See *Kuebler*,

346 Mich App at 653. Moreover, the fact that the messages were sent within a finite period in the summer of 2023 does not negate the seriousness of defendant's behavior, particularly when he continued to justify and explain his behavior during the evidentiary hearing.

Nor would the fact that plaintiff occasionally punished ES by taking away ES's electronic devices establish that this factor should have favored both parties or just defendant. Plaintiff's decision to take away ES's electronics was a reasonable and ordinary disciplinary measure, particularly considering defendant's continued inappropriate communications with ES. As it relates to plaintiff's decision to call the police against ES, plaintiff's threats and decision to call the police were a response to ES's incorrigible behavior, as demonstrated by the testimony and photographs showing that ES defaced plaintiff's home and destroyed her personal items. Plaintiff did not actually call the police until ES started talking about suicide. Considering the evidence that defendant was guiding ES to misbehave and "fight" plaintiff, the trial court's finding that this factor favored plaintiff was not against the great weight of the evidence.

## B. FACTOR (d)

Factor (d) examines "[t]he length of time the child has lived in a stable, satisfactory environment, and the desirability of maintaining continuity." MCL 722.23(d). The evidence also supported the trial court's finding that defendant routinely intruded on plaintiff's home, which also created an unstable and unsatisfactory environment. Plaintiff testified defendant was routinely interrupting her environment by entering her home without permission and making romantic advances toward her. On one occasion, plaintiff felt trapped by defendant and threatened to call the police. Defendant also showed up at plaintiff's house uninvited at least 50 times in the last seven years, including about 10 to 15 times since January 2023. On one occasion, he entered her bedroom without her approval. In addition to plaintiff's testimony on the subject, even defendant testified he went to plaintiff's home with DS on one occasion to "surprise her." He acknowledged attempting to hug plaintiff. While defendant denied having a romantic motive for his conduct, it was the role of the trial court to determine defendant's credibility on this issue.

Defendant maintains that the court overlooked that the children were not aware of the parties' discussions about the romantic advances and that both parties had stable homes and employment. But evidence existed to support that defendant was disrupting the children's environment by disparaging plaintiff, as discussed earlier. As noted, defendant also told ES that plaintiff stole the marital home from him, further undermining their stability. The evidence established that defendant engaged in a pattern of undermining the children's stability in their home environment with plaintiff. Considering this evidence, the trial court's finding that Factor (d) favored plaintiff was not against the great weight of the evidence.

## C. FACTOR (h)

Factor (h) considers "[t]he home, school, and community record of the child." MCL 722.23(h). As the court noted, there was evidence the children vandalized plaintiff's home following defendant's message exchanges with ES encouraging her to misbehave. Moreover, ES was on the telephone with defendant during the period she vandalized plaintiff's home.

-12-

Defendant argues the court overlooked that both children were participating in an advanced curriculum and that ES was recently accepted into a competitive high school. But as the trial court noted, the children's school and community records improved when defendant had limited parenting time. Defendant also disfavored having the children in activities, but the children asked to reenroll in activities. As defendant notes, plaintiff reenrolled the children in early 2023, which was during the period of equal parenting time. However, defendant overlooks that plaintiff testified he was previously against the children's participation in activities. Additionally, plaintiff testified that after defendant received more parenting time through the consent order, ES started missing school assignments and was in danger of failing a class.

As for the trial court's finding that defendant had lofty expectations for the children's careers, defendant testified in detail about how he is helping the children reach those career goals. He explained that ES (who was in the eighth grade) wants to become a doctor, specifically a neurosurgeon, and DS (who is a few years younger than ES) wants to become a pilot. Defendant and ES talked about her attending Harvard University and were discussing medical schools. Considering defendant's detailed testimony about how he is tutoring his children, and considering his high aspirations for the children even at a young age, the court's finding that defendant did not realize the impact of his expectations and pressures on the children was not against the great weight of the evidence. For these reasons, the trial court's finding that Factor (h) favored plaintiff was not against the great weight of the evidence.

## D. FACTOR (j)

Factor (j) examines "[t]he willingness and ability of each of the parties to facilitate and encourage a close and continuing parent-child relationship between the child and the other parent." MCL 722.23(j). The trial court ruled that this was "a very significant factor" in the case. As noted in relation to Factor (b), defendant sent numerous messages to ES encouraging her to misbehave in plaintiff's care and suggesting that plaintiff stole the marital home from him and cheated on him. As noted earlier, ES was also on the telephone with defendant when she engaged in vandalism of plaintiff's home. Even ES's therapist reported that defendant disparaged plaintiff during his session with ES.

Defendant denied intending to interfere with plaintiff's relationship with the children or directing their disruptive behavior. However, the trial court had the discretion to determine defendant's credibility on these subjects. Considering the significant evidence of parental alienation, the court did not make a finding against the great weight of the evidence that defendant encouraged the deterioration of plaintiff's relationship with the children, particularly ES. Defendant points out that plaintiff did not seek modification of the equal parenting-time schedule initially. However, as noted earlier, plaintiff eventually sought an order requiring defendant's parenting time to be supervised only after discovering defendant's inappropriate messages with ES. The fact that plaintiff testified she continues to have a strong bond with the children despite defendant's conduct does not support defendant's position that he was willing to encourage a close and continuing parent-child relationship. The trial court's findings that this factor was very significant and favored plaintiff were not against the great weight of the evidence.

-13-

## E. FACTOR (k)

Factor (k) examines "[d]omestic violence, regardless of whether the violence was directed against or witnessed by the child." MCL 722.23(k). For this issue, defendant contends the trial court erred by considering testimony about allegations of domestic violence from before plaintiff's filing of the 2017 divorce complaint. We disagree.

In general, all relevant evidence is admissible at a hearing. MRE 402. Evidence is relevant when it tends to make a fact that is of consequence in deciding the action more or less probable than it would be without the evidence. MRE 401. To support his claim that the evidence of defendant's acts of domestic violence before the parties were divorced was not admissible at the hearing, defendant relies on *Kuebler*, 346 Mich App at 663-665, in which this Court held that the trial court abused its discretion by admitting expert opinions about domestic violence that allegedly occurred before the parties' divorce. This Court explained that modification of child custody generally requires new evidence that was not available at the time of the divorce action. *Id*. at 663-664. Thus, the trial court in that case "erred by reopening this issue to rehash long-settled disputes." *Id*. at 664. This Court explained, "There was absolutely no evidence of recent domestic violence in defendant's home or even of any *allegations* of recent domestic violence." *Id*. at 665. This Court also held the trial court committed a legal error by allowing an expert to offer opinions on these subjects over the defendant's objections. *Id*. Therefore, the trial court abused its discretion "by reopening the domestic-violence question and allowing [the] plaintiff to present inadmissible evidence on this topic." *Id*. at 666.

However, this case differs from *Kuebler* because the allegations relating to the 2017 acts of domestic violence were relevant to, and provided context for, plaintiff's more recent allegations that defendant was showing up to her home unannounced, making unwanted romantic advances, and touching her without her consent. The case came before the trial court on plaintiff's motion to modify parenting time. A primary basis for the motion was plaintiff's allegation that defendant would show up at plaintiff's house unannounced and go inside. Plaintiff alleged defendant attempted to touch, hug, and kiss her despite her protests, and defendant was suggesting that he wanted to reconcile with her.

At the evidentiary hearing, plaintiff testified that defendant engaged in acts of domestic violence against her before the parties were divorced and after she discovered he was having an affair. Among other things, defendant hit plaintiff's head against the walls of their home and told her that she was a "dog." Plaintiff testified defendant's behaviors continued well after the divorce judgment. She testified defendant began hugging her following the divorce and on one occasion even blocked her ability to leave his house for a period. Plaintiff began to scream, and defendant and the children laughed at her. However, defendant begged plaintiff not to call the police, and she did not. Defendant also showed up at plaintiff's house uninvited at least 50 times in the last seven years, including about 10 to 15 times since January 2023. On one occasion, he entered her bedroom without her approval. Defendant's conduct leading up to the parties' divorce was relevant to providing context for why plaintiff viewed defendant's behavior following the divorce as inappropriate and warranting a modification to the parenting-time arrangements. See MRE 401. The trial court's finding that this factor was relevant to the case and weighed in plaintiff's favor was not against the great weight of the evidence. The trial court's best-interest determination was not an abuse of discretion.

-14-

## IV. INTERNATIONAL TRAVEL

Defendant next argues the trial court abused its discretion by prohibiting him from traveling internationally with the children without a prior court order. We disagree.

MCL 722.27a(9) provides, in relevant part:

A parenting time order may contain any reasonable terms or conditions that facilitate the orderly and meaningful exercise of parenting time by a parent, including 1 or more of the following:

* * *

(i) Any other reasonable condition determined to be appropriate in the particular case.

Defendant argues that the court's restriction on international travel was unreasonable considering that plaintiff did not request this relief and there was no testimony about any kidnapping concerns. He relies on the Uniform Child Abduction Prevention Act, MCL 722.1521 *et seq.*, in support of his position. MCL 722.1527(1) provides a lengthy list of factors for the trial court to consider when determining whether a "credible risk of abduction of a child" exists. However, we conclude that the factors outlined in MCL 722.1527(1) are not dispositive in this case. The Uniform Child Abduction Prevention Act outlines a specific process for a petitioner to file a petition under the statute to take measures to prevent abduction in a child custody proceeding. See MCL 722.1524(1). This procedure was not used in this case to prevent child abduction. And there is no indication that the procedures outlined in the Uniform Child Abduction Prevention Act are the sole basis on which the court can restrict international travel with the children subject to a child custody proceeding.

Additionally, defendant overlooks the evidence of his failure to comply with court orders. The consent order detailed that neither parent should withhold the children's passports from the other, yet there is evidence defendant withheld the children's passports from plaintiff. The record also reflects the parties were married in Poland, have roots in Poland, and frequently travel back and forth with the children to visit extended family in Poland. Evidence also established that defendant's behavior toward plaintiff and the children was becoming more erratic as this case progressed. Under the circumstances of the case, the trial court's factual finding that defendant was a flight risk was not against the great weight of the evidence.

Nor is the fact that plaintiff did not expressly request the restricted travel dispositive on this issue. In fact, by the time of the evidentiary hearing, plaintiff was requesting that defendant receive supervised visitation and undergo intensive therapy until discharged. The restriction on international travel is not absolute—defendant can request leave of the court if he wishes to travel to Poland with the children. See MCL 722.27a(9). No error occurred.

## V. ATTORNEY FEES

Next, defendant argues the trial court abused its discretion by awarding plaintiff $15,000 in attorney fees because there was no causal connection between defendant's conduct and

plaintiff's incurred attorney fees, and the court failed to engage in the required analysis before awarding the fees. We disagree with defendant's first argument but agree with his second argument.

We review for an abuse of discretion a trial court's ruling on a motion for attorney fees. *Loutts v Loutts (After Remand)*, 309 Mich App 203, 215-216; 871 NW2d 298 (2015). We will review any related issues of law de novo and any findings of fact for clear error. *Id*. at 216. Clear error occurs in this context when we are left with a definite and firm conviction that the trial court made a mistake. *Cassidy*, 318 Mich App at 479. We review for an abuse of discretion a trial court's decision that an evidentiary hearing is not warranted. *Kernen v Homestead Dev Co*, 252 Mich App 689, 691; 653 NW2d 634 (2002). For purposes of reviewing an attorney-fee award in a domestic-relations action, "[a]n abuse of discretion occurs when the result falls outside the range of principled outcomes." *Cassidy*, 318 Mich App at 479.

## A. ATTORNEY FEES UNDER MCR 3.206(D)(2)(b)

Michigan follows the American rule of attorney fees, which provides that attorney fees generally are not recoverable from the losing party. *Haliw v Sterling Heights*, 471 Mich 700, 706-707; 691 NW2d 753 (2005). However, an exception exists when the fee award is authorized by a statute, a court rule, or another recognized exception to the American rule. *Pioneer State Mut Ins Co v Michalek*, 330 Mich App 138, 146; 946 NW2d 812 (2019). The court rule at issue in this case is MCR 3.206(D)(2)(b), which provides that a party requesting attorney fees must allege sufficient facts to show that "the attorney fees and expenses were incurred because the other party refused to comply with a previous court order, despite having the ability to comply, or engaged in discovery practices in violation of these rules." In *Reed v Reed*, 265 Mich App 131, 165; 693 NW2d 825 (2005), this Court held that the party requesting attorney fees must establish that the fees were incurred and are reasonable. There must be a causal connection between the fees actually incurred and the defendant's unreasonable conduct. *Id*. at 167.

Defendant argues the court erred by finding that (1) defendant's behaviors and communications violated the nondisparagement clauses in the divorce judgment and other prior court orders, and (2) defendant's objection to plaintiff's translation of defendant's messages with ES was unreasonable and necessitated the additional professional translation costs. We disagree.

Starting with defendant's violation of the nondisparagement provisions of the divorce judgment and prior court orders, the evidence supported that defendant refused to comply with a previous court order, despite having the ability to do so. As noted earlier, the divorce judgment contained a provision prohibiting the parties from speaking disparagingly about the other parent in the presence of the children. The court reinforced the nondisparagement requirement in a March 2022 order. There was ample evidence that defendant violated these prior court orders by making disparaging comments about plaintiff to ES and by encouraging ES to misbehave in plaintiff's presence, as outlined earlier. Additionally, defendant's disparagement of plaintiff and tactics designed to alienate the children from plaintiff were a primary reason the court conducted the evidentiary hearing.

Regarding the issue of the translation of the messages from Polish to English, as the trial court noted, defendant argued that plaintiff's translation of the messages was inaccurate, which

necessitated the costs of the professional transcription. As it turned out, the professional translation did not differ in any material respect from plaintiff's original translation. Defendant acknowledged sending and regretting many of the messages. In other words, defendant's hearsay objection was not reasonable, and the trial court did not err by considering the transcription issue as a secondary basis for granting fees and costs under MCR 3.206(D)(2)(b) because defendant engaged in unreasonable, and perhaps deceptive, discovery practices that caused plaintiff to incur additional costs. See *Cassidy*, 318 Mich App at 481, 486. In sum, the trial court did not abuse its discretion by ruling that plaintiff was entitled to reasonable attorney fees and expenses.

## B. HEARING AND ANALYSIS

However, the trial court erred by awarding plaintiff $15,000 in attorney fees without engaging in the analysis required under *Pirgu v United Servs Auto Ass'n*, 499 Mich 269; 884 NW2d 257 (2016), or ruling on whether an evidentiary hearing was warranted.

When an exception to the American rule exists, a party requesting attorney fees bears the burden to establish the reasonableness of the attorney fee through the following three-step process: (1) the trial court will determine the reasonable hourly rate customarily charged in the same locality for similar legal services; (2) the rate is multiplied by the reasonable number of hours expended in the case, which serves as the starting point for calculating the fee; and (3) the trial court will consider several additional factors to determine if a fee departure is appropriate. *Pirgu*, 499 Mich at 274, 281, citing *Smith v Khouri*, 481 Mich 519, 530-533; 751 NW2d 472 (2008) (opinion by TAYLOR, C.J.). The factors, which include factors outlined in MRPC 1.5(a) and *Wood v Detroit Auto Inter-Ins Exch*, 413 Mich 573; 321 NW2d 653 (1982), were condensed in *Pirgu* into the following list:

> (1) the experience, reputation, and ability of the lawyer or lawyers performing the services,
>
> (2) the difficulty of the case, i.e., the novelty and difficulty of the questions involved, and the skill requisite to perform the legal service properly,
>
> (3) the amount in question and the results obtained,
>
> (4) the expenses incurred,
>
> (5) the nature and length of the professional relationship with the client,
>
> (6) the likelihood, if apparent to the client, that acceptance of the particular employment will preclude other employment by the lawyer,
>
> (7) the time limitations imposed by the client or by the circumstances, and
>
> (8) whether the fee is fixed or contingent. [*Pirgu*, 499 Mich at 282.]

The *Wood* and MRPC 1.5(a) factors are not exhaustive, and the trial court may consider any other relevant factors. *Id*.

In *Pirgu*, the Michigan Supreme Court clarified that the trial court *must* engage in this analysis, beginning with the reasonable hourly rate customarily charged in the same locality for similar services. *Id*. at 281. The rate is then multiplied by the reasonable number of hours, which will give the court "a baseline figure." *Id*. Additionally, "[i]n order to facilitate appellate review, the trial court should briefly discuss its view of each of the [*Wood* and MRPC 1.5(a) factors] on the record and justify the relevance and use of any additional factors." *Id*. at 282. Generally, the trial court must conduct an evidentiary hearing on a challenge to the reasonableness of the claimed attorney fees. *Sabbagh v Hamilton Psychological Servs, PLC*, 329 Mich App 324, 359; 941 NW2d 685 (2019). " 'However, if the parties created a sufficient record to review the issue, an evidentiary hearing is not required.' " *Id*. (citation omitted).

In this case, it is not clear whether the trial court found that the parties created a sufficient record to review the issue, and the record before this Court is limited because the trial court did not explain the factual basis for its ruling. If the trial court concluded that the parties created a sufficient factual record to review the issue, then the court should have articulated the factual basis for this finding on the record. Otherwise, an evidentiary hearing was required to address defendant's objections to plaintiff's billing statement. See *id*. Additionally, even assuming an evidentiary hearing was not warranted, the court made no finding on the reasonable hourly rate customarily charged in the same locality for similar legal services. The court also did not make an express finding on the reasonable number of hours expended in the case. And finally, the court did not determine whether the *Wood* and MRPC 1.5(a) factors warranted a fee departure. See *Pirgu*, 499 Mich at 281-282. We therefore vacate the attorney-fee award in the July 26, 2024 order and remand the case to the trial court for (1) a determination whether an evidentiary hearing is required and (2) an analysis of the reasonable attorney fee using the framework outlined in *Pirgu*.

## VI. REMAND TO A DIFFERENT TRIAL JUDGE

Defendant argues this Court should remand the case to a different trial judge. We disagree.

A party preserves the issue whether this Court should remand the case to a different trial judge by moving to disqualify the trial judge in the trial court. *In re Contempt of Henry*, 282 Mich App 656, 679; 765 NW2d 44 (2009). Defendant did not move in the trial court to disqualify the trial judge. Therefore, the issue is unpreserved. See *id*. We review unpreserved claims in child custody proceedings for plain error. *Quint v Quint*, ___ Mich App ___, ___; ___ NW3d ___ (2024) (Docket No. 368002); slip op at 7. To establish plain error, the appellant must establish the following elements:

> 1) error must have occurred, 2) the error was plain, i.e., clear or obvious, 3) the plain error affected substantial rights, and 4) once a defendant satisfies these three requirements, an appellate court must exercise its discretion in deciding whether to reverse. Reversal is warranted when the plain, forfeited error seriously affected the fairness, integrity or public reputation of judicial proceedings. [*Id*. at ___ ; slip op at 7 (quotation marks and citation omitted).]

"The general concern when deciding whether to remand to a different trial judge is whether the appearance of justice will be better served if another judge presides over the case." *Bayati v Bayati*, 264 Mich App 595, 602; 691 NW2d 812 (2004). We will remand the case to a different

trial judge "if the original judge would have difficulty in putting aside previously expressed views or findings, if reassignment is advisable to preserve the appearance of justice, and if reassignment will not entail excessive waste or duplication." *Id*. at 603. The fact that the trial judge came to an incorrect legal conclusion is not a reason to remand the case to a different judge. *Id*. Moreover, "[r]epeated rulings against a party, no matter how erroneous, or vigorously or consistently expressed, are not disqualifying." *Id*.

Defendant maintains that the trial court predetermined the merits of the issues before conducting the evidentiary hearing, which affected its later rulings. However, for the reasons discussed earlier, the trial court's initial impression from the messages between defendant and ES that defendant was engaging in parental alienation was well-supported by the record, and the trial court considered the issue in more detail by conducting a nine-day evidentiary hearing. The court's ruling, considered alone, does not demonstrate that the court was biased against defendant.

Defendant also takes issue with the trial court's statement during the September 27, 2023 case-management conference that "[t]here's no question in this case based on the exhibits that I have reviewed that I do, I do believe parental alienation is going on." The court also told defendant, "You testified under oath that you are not disparaging in any way to [plaintiff] and that you're not encouraging the bad behavior, and the text messages show that that testimony was false." The court indicated it was not going to refer the case for perjury charges, but it could if more evidence came out at the evidentiary hearing. These statements do not show judicial bias. The court made these statements on the basis of the text messages and other messages plaintiff presented to the court, which showed defendant engaged in a series of disparaging remarks and encouraged ES to disobey plaintiff. Defendant acknowledged and regretted certain messages.

Defendant further notes the court made the following statements during an exchange with his counsel at the April 3, 2024 evidentiary hearing:

> [*Defense Counsel*]: If I could just say, your Honor, never in the history of their post judgment like co-parenting have we heard of them having a blow up over money in front of the children or anywhere else. So there's never been a confrontation like that.
>
> *The Court*: Again, we, I'm interested, I'm interested when you get to the testimony about the text messaging, because we just heard your client testify about his concern about his daughter's academic performance. Never did he even recognize that all the time he was concerned about it he was text messaging with his daughter about what she should do with her mother. And I do think that there's a disconnect in what he's expecting of his daughter, and, uhm, what he's, what he's doing.

There is no apparent bias in the court's statements. The court indicated its concern was over defendant's statements in the messages with ES, which were a major subject of the evidentiary hearing. Defendant also argues the court's bias was clear from its finding that defendant was a flight risk. However, as discussed earlier, the court's ruling on this issue was not an abuse of discretion. Even if it were, the court's finding would not constitute a reason to remand the case to a different judge. Furthermore, considering the length of the case, remanding to a new judge would

require waste and duplication. For these reasons, defendant has not met the required standard to remand the case to a different trial judge.

## VII. CONCLUSION

Affirmed in part, vacated in part, and remanded for further proceedings. We do not retain jurisdiction.

/s/ Christopher P. Yates
/s/ Mark T. Boonstra
/s/ Adrienne N. Young